38  219
127  610

THE CINCINNATI AND CHICAGO AIR LINE RAILROAD COMPANY

*v.*

NACHMANN MARCUS.

1. BAGGAGE—*liability of carriers*.  The purchase of a railroad ticket includes the payment for the transportation of the person's baggage, not exceeding a specified weight.

2.  Baggage consists of such articles as are necessary for a person's comfort and convenience, with the necessary amount of money for expenses.

3.  A person, who, under pretence of having baggage transported, places in the hands of the agent of a railroad company merchandise, jewelry and other valuables, is guilty of fraud, which releases the company from liability as common carriers.

4.  In such a case, the company becomes possessed of the property as common bailees for hire, for by reason of the fraud they are released from the higher obligations of common carriers, and only bound to use reasonable care in its transportation.

5   To create the liability of common carriers the shipper must act in good faith ; fraud avoids all contracts.

6.  A railroad company can not be held liable as common carriers when valuables are packed with other goods in such manner as to deceive them, unless informed of the contents of such package.

7.  The concealment of any fact or circumstance material to the risk avoids the contract, though the omission be the result of accident or negligence.

APPEAL from the Circuit Court of Cook County.

This was an action brought to recover the value of a trunk and contents, consisting of gold and silver watches, chains and other jewelry, alleged to be of the value of one thousand dollars.

The declaration charged, that as common carriers, the appellant received the trunk and contents at Indianapolis, Indiana, to be transported to Chicago; that the appellee paid the price for such transportation, and that through the negligence of appellant the same was lost, the goods abstracted, stolen and converted.

The case was heard before Williams, Judge, and a jury, at the November term, 1864, and a verdict for appellee for $250 given, which was set aside and a new trial granted on his motion.  A second trial by jury was had at the January term and resulted in a verdict for appellee for $825.  Whereupon an appeal was taken to this court.

Mr. GEORGE GARDNER, for appellant.

· Messrs. CHASE & INGERSOLL, for appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of case commenced by appellee in the Cook Circuit Court against appellant for the loss of a part of the contents of a trunk placed in their hands at Indianapolis, to be transported to Chicago. The evidence shows that appellee, who was a peddlar, left Cincinnati in July, 1864, and came by rail to Indianapolis, on his way to Chicago. Before leaving for Indianapolis he purchased a ticket to the latter place, paying fifty cents for extra weight. Newberger testifies that there was packed in the trunk, and in his presence, a lot of goods, gold and silver watches, chains, jewelry and other articles. This he states was done the night previous to leaving Cincinnati for Indianapolis, and he states that the trunk was left in the room in which appellee and witness slept, and remained there until they took it to the depot, when it was checked and they left on the morning train and arrived at Indianapolis about noon of that day.

The same witness swears that they remained there until nearly night, when he went to the depot, delivered the check, received the trunk and took it to appellant's depot, where it was received by the proper agent and checked for Chicago. That it was then securely locked. But on account of extra weight, of the peddlar's pack and the trunk, both of which were checked by the baggage master, he charged one dollar over the fair of appellee paid for his passage on the train. The extra charge was paid, appellee at first objecting, but finally paid it, and left on the next train for Chicago. When he arrived there and called for his trunk and pack the former had not arrived. He called next day, but it was not in the depot; and appellant's agent caused search to be made at the different hotels, but it could not be found. Appellee left the key of the trunk with the agent of the road. On calling again he was informed that the trunk had arrived but the check had been mismatched and the trunk had, by mistake, been sent back to Indianapolis, but

had been returned to Chicago, on a telegraph dispatch. It was not received until a week after it should have arrived, and when it came the lock had been ·broken, and the watches, chains, jewelry and other articles of value were missing.

Appellants introduced witnesses who testified that when the trunk arrived at Chicago it was in good order; that it was opened on its arrival and no such jewelry or goods was found in the trunk. They also proved the custom of railroads not to accept trunks and other packages containing jewelry or other valuables as baggage on their passenger trains. They also proved the weight of baggage allowed to each passenger, and that by custom they charged double freight rates for all over that weight. The jury found a verdict against appellants upon which a judgment was rendered, from which this appeal is prosecuted.

Railroad companies are equipped for the purpose of transporting persons and property, and for each they have provided necessary and suitable means. They have for the transportation of persons one class of trains, and for that of property another and different class. They also have a separate class of officials for each, and this is understood by all persons transacting business with such bodies. · A person desiring to travel over the road expects to do so on a passenger train, and if he wishes to ship merchandize, stock or produce, he expects to do so on trains expressly provided for the purpose; and in doing either he knows that he will pay different rates of hire for the transportation. All persons are aware that it is not usual to transport merchandize on a passenger train, although it may happen that freight cars may be attached to a passenger train, though unusual.

When a person pays for his passage over the road, both parties understand that it includes payment for his baggage, not exceeding a special weight. This is for the reason, that all persons traveling, require conveniences, that they must provide for themselves, and must usually be taken with them, and to avoid the inconvenience of making a separate contract the

transportation is, by custom, included in the fair paid for the ticket. When, however, a passenger's baggage exceeds the limited weight, Railroad Companies have adopted the rule of charging an extra price for the excessive weight, as was done in this case. But in doing so they only propose thus to carry baggage. Not merchandize or articles of commerce. It is only such apparel and other articles necessary for a person's comfort and convenience whilst away from his home,/with the necessary sum of money for his expenses.)) This usually constitutes baggage, and both parties so understand it, when it is received by the Company.

When a person, therefore, under the pretense of having baggage transported, places in the hands of the agents of a Railroad, merchandize, jewelry and other valuables, without notifying them of its character, he practices a fraud upon the Company. And by doing so he releases them from their liability, as common carriers. He, by such means, endeavors to have transported articles of freight, as baggage, and usually free of charge. He also places it in the hands of a different set of officers and employees, with different duties to perform, and this too without notice of the risk incurred. He induces them to do what they would otherwise refuse to do, if apprised of the character of the articles delivered into their custody. They may, no doubt, send freight on their passenger trains, when received for transportation, if they choose, or they may contract if they think proper to so transport it, but in such cases they must have the right to exercise their choice.

In this case they were deprived of the option and were imposed upon to carry freight for baggage. It is true that appellee did not say to the agents of the Company, that it was not merchandize but it was so understood by them as they do not propose to carry any thing but baggage in that mode. He therefore paid the extra price to carry baggage and not freight. They then became possessed of the property rather as common bailees than as common carriers. Being imposed upon in having it placed in their hands, not receiving it as freight,

and it not being baggage, they were released from the higher degree of diligence of common carriers. To create that liability it must be received in that character and not in some other. But having received it, they became liable in good faith to use all reasonable care in its transportation to the place where they agreed to deliver it. They were not insurers, but are liable for negligence, fraud or malfeasance.

No objection is perceived to appellant's fourth instruction as it was drawn. It requested that the jury be informed, that if appellee, as a passenger, concealed in an ordinary traveling trunk, a large amount of valuable watches, jewelry and other goods owned by him and used for the purpose of traffic, and procured the trunk with its contents to be checked and carried by appellants as a part of his ordinary baggage, and while the trunk and its contents were being carried without gross negligence or fraud on the part of appellants, a portion of the goods were stolen or lost, then the law is for appellants. This we think was a clear and fair statement of the law applicable to the facts before the jury. But the court modified the instruction by adding this clause at its conclusion, " but if the jury shall believe, from the evidence, that the plaintiff at Indianapolis, in the State of Indiana, paid, and the defendant then and there received the sum of one dollar, for the transportation of the plaintiff's trunk from Indianapolis to Chicago, over and above the baggage, the transportation of which would be included in plaintiff's fare as a passenger, then the trunk would not be a part of the ordinary traveling baggage of the plaintiff."

The modification to this instruction impliedly, informs the jury that if appellee did conceal merchandize and valuables in the trunk, and procured it to be checked and carried as a part of his ordinary baggage, by paying the extra charge, it was not baggage, but freight, and that appellants would be liable as common carriers. The jury, no doubt, understood from this modification, that fraud and concealment, in procuring the

check, could not affect the liability of the Company. The duty of appellants would be the same whether it was baggage or freight, but when induced to receive it as the former when it was the latter, by fraud and concealment, could not impose the liability of common carriers. When they are induced by such means to receive it, they are only liable as common bailees for hire. They can not assent to receive such articles as freight when they are by fraud induced to receive it as baggage. The parties must be held to act in good faith in shipping either as baggage or as freight, to create the liability of common carriers.

In the case of *The Chicago and Aurora Railroad Company* v. *Thompson*, 19 Ill. 578, it was held that Railroad Companies are not to be held liable as common carriers, when money is packed in a box among other goods in such a way as to mislead and deceive them; but to render them liable they should have been informed of the contents. The principle was also announced as applicable to that case, that fraud avoids all contracts. And the shipping of the money in the mode adopted was a *suppressio veri*. It was also said that the concealment of any fact or circumstance material to the risk is fatal to the contract. And the result is the same although the omission be the result of accident or negligence. To create the highest degree of liability which attaches to the common carrier, there must be fairness and good faith on the part of the freighter. It will be observed that these cases are parallel in principle, and the rule announced in that must govern this case. The modification of this instruction was opposed to the rule there announced, and tended to, and no doubt did mislead the jury in finding their verdict. The judgment of the court below must therefore be reversed and the cause remanded.

*Judgment reversed.*