Thomas Dunlap *vs.* International Steamboat Company. Alexander Stewart *vs.* Same.

The U. S. St. of 1851, *c.* 43, § 2, exempting masters and owners of sea-going vessels from liability as carriers for the loss of bank bills, coin, jewelry, precious metals and precious stones, shipped and laden without notice to them and entry on the bill of lading of the true character and value of the same, does not apply to their contracts for the carriage of passengers with their luggage.

A carrier of passengers with their luggage is not liable for the loss of money beyond a sum sufficient for the reasonable travelling expenses of a passenger, contained in a valise which he delivers as his luggage and the carrier receives as such without notice that its contents have any peculiar value.

A carrier of passengers with their luggage is not liable for the loss of money of one passenger contained in a valise which another passenger, with the knowledge of the first, delivers as his own luggage, and the carrier receives as such.

Tort for the value of a valise and its contents lost from the custody of the defendants as common carriers. These actions were tried together in the superior court, before *Ames,* J., when the material facts appeared substantially as follows:

The defendants were a corporation running a line of steamboats between St. Johns in New Brunswick and Boston, by way of Eastport. Early in the morning of May 31, 1865, the plaintiffs took passage on one of their boats at St. Johns. Dunlap testified that, having engaged passage for Boston, he came to the wharf in St. Johns in company with Stewart, who had en-

gaged passage for Eastport; that, on ascertaining that he could not then obtain a state-room, he sent a telegram to Eastport to secure one there, and gave his valise to the defendants' baggage-master on the wharf, to be checked for Eastport only; that the baggage-master received it, remarking that no checks were given for luggage for Eastport, but he would take it, marking it with chalk " For Eastport; " that it contained wearing apparel, and eighty-six sovereigns in British coin, and three hundred and ninety-three dollars in gold coin of the United States, all which belonged to himself, and also forty-eight sovereigns in British coin and two hundred and twenty-three dollars in gold coin of the United States, which belonged to Stewart; that, after thus delivering it to the baggage-master, the plaintiffs went on board, and the boat immediately left the wharf; that soon afterwards, and before reaching Eastport, the passengers were called to show their luggage to the officer of customs, and then, on search for the valise, it could not be found, and never has been found since; that on starting from St. Johns it was his purpose to travel as far as to New York, and be absent from six to eight weeks, and he took no other money than that contained in the valise, except two or three dollars in his pocket-book.

This testimony was confirmed by that of Stewart and one other witness; but it did not appear that any notice was given to the defendants or any of their agents or servants that the valise contained gold or any article of peculiar value. The defendants thereupon contended " that, for want of such notice, the plaintiffs, by the provisions of the U. S. St. of 1851, c. 43, § 2,*

---

* " If any shipper or shippers of platina, gold, gold dust, silver, bullion, or other precious metals, coins, jewelry, bills of any bank or public body, diamonds or other precious stones, shall lade the same on board of any ship or vessel without, at the time of such lading, giving to the master, owner or owners of the ship or vessel receiving the same, a note in writing of the true character and value thereof, and have the same entered on the bill of lading therefor, the master and owner or owners of the said vessel shall not be liable, as carriers thereof, in any form or manner. Nor shall any such master or owners be liable for any such valuable goods beyond the value and according to the character thereof so notified and entered."

By § 7 the provisions of the act do not apply to vessels engaged in inland transportation.

were expressly prohibited and barred from maintaining any action against them for the alleged loss of any of the gold not required and in good faith intended for the reasonable travelling expenses of said Dunlap;" but the judge ruled " that said statute was not a bar to the plaintiffs' actions, and did not apply to the present cases."

By the evidence introduced by the defendants, it appeared " that a tariff or list of prices of freight was posted at their ticket office, setting forth among other things that coin could be sent by their boats as freight at one quarter of one per cent. on the amount."

On the whole evidence, they conceded that, if the jury should be satisfied that they received the valise, they were liable to Dunlap for the value of it and the wearing apparel contained in it according to a schedule annexed to the declaration, in which such value was set at the sum of $133; and also for so much of the money as was necessary " for his reasonable travelling expenses and personal use;" but they contended that he was entitled to recover no more, and that Stewart was not entitled to recover anything; and they asked the judge to instruct the jury as follows:

" Unless the jury are satisfied that the loss occurred through the gross negligence of the defendants, the plaintiffs cannot re cover; and proof that the defendants received the goods, and have never delivered them to the plaintiffs, is not sufficient to charge the defendants, if they are shown to have used ordinary care in regard to them. The burden of proof is on the plaintiffs to show not only the loss, but that it occurred by reason of the defendants' gross neglect. If the jury are satisfied that the plaintiff Dunlap did not use such care with regard to his gold as men usually take, he cannot recover. The defendants are not liable for the felonious or fraudulent acts of their servants, unless it appears that they were negligent in their selection or retention in their service. And the plaintiff Stewart is not entitled to recover, for no contract of carriage has been shown to have been made with him."

The judge " did not instruct the jury in the terms of either

of the propositions suggested, but did instruct them that it had become material for them to find what amount of money the plaintiff Dunlap might reasonably and properly carry in his valise for his travelling expenses and personal use, taking into view the length of time to be occupied and the circumstances generally of his proposed journey ; that, in order to recover anything more than the value of the valise, and the articles in the schedule, and the sum which the jury should find reasonable and proper for his expected travelling expenses, and also in order for the plaintiff Stewart to recover anything whatever, it was not sufficient to prove that such additional property was intrusted to the defendants and had been lost, but the plaintiffs were bound also to prove that they had been guilty of no want of ordinary care and prudence themselves, and also that on the part of the defendants there had been gross negligence or fraud, and that the loss of the property was owing to such gross negligence or fraud; that the burden of proof, in this part of the case, was on the plaintiffs ; that the disappearance of the property was not of itself sufficient to make out the plaintiffs' case in that respect ; that the fact that the valuable character of the valise was not disclosed was to be taken into consideration, and that the defendants were only bound to take that degree and kind of care which the apparent or presumptive value of the valise appeared under the circumstances to require ; that the plaintiffs were not, on the other hand, bound to prove the exact circumstances or mode in which the loss occurred; that the defendants would be liable if the property were lost by their gross negligence, or if it were fraudulently appropriated by any person in their regular employment, while on duty in or about the baggage, or if any person so in their employment fraudulently or by gross negligence permitted any other person to take it; and finally, that it was sufficient if the plaintiffs proved that it was intrusted to the defendants and had disappeared under such circumstances as to justify and compel the inference of gross neglect or fraud on the part of the defendants or their servants, acting under their authority, express or implied."

It was agreed that at the time of the loss of the valise " the

premium on gold was thirty-six per cent.," and the jury were instructed, if they should find for the plaintiffs, or either of them, " to add to the nominal value of the gold in that proportion." They returned verdicts for the plaintiffs, with damages in the sum of $1335.12 in the case of Dunlap, and $671.13 in the case of Stewart; and in the case of Dunlap they found specially " that the sum of three hundred dollars was a reasonable and proper amount for said Dunlap to have taken with him for travelling expenses and personal use." The defendants alleged exceptions; and the judge reported the cases for revision by this court, " the verdicts to be set aside, affirmed, or amended, as law or justice may require."

*J. A. Andrew & J. A. Loring,* for the defendants.

*A. A. Ranney,* for the plaintiffs.

BIGELOW, C. J. We are of opinion that the provisions of the U. S. St. of 1851, c. 43, § 2, on which the defendants rely in bar of these actions, do not apply to contracts entered into with masters or owners of vessels for the carriage by water of passengers with their luggage. The manifest design of the statute was to restrict the liability of common carriers by water of certain kinds of goods and merchandise. In regard to these it changes the rule of the common law. For this reason, its provisions are not to be extended by implication. Giving to the phraseology of the statute its fair and full meaning, without enlarging it by construction, it indicates quite clearly that its framers intended to embrace only that class of contracts where goods are shipped and laden on board of vessels to be transported as freight, for which bills of lading are usually given by the carrier and received by the shipper, and form the evidence of the terms on which the contract of carriage is to be performed. The contracts on which the plaintiffs rely are not within the provisions of the statute. On this point the ruling at the trial was right.

On careful consideration of the instructions embraced in the defendants' prayer and those given by the court to the jury, we are led to the conclusion that neither of them contained a correct statement of the rules of law applicable to the facts in proof. It was shown at the trial, and on this part of the case there was

no controversy between the parties, that there was but a single article of luggage delivered to the defendants; that this was a valise such as is commonly used by travellers for the transportation of wearing apparel and other personal effects; that the whole of its contents, except a portion of the money contained in it, belonged to one of the plaintiffs, by whom it was delivered to the defendants' agent, and that the other plaintiff had no valise or trunk, and no wearing apparel or other articles of personal use in his possession or keeping, except such as were on his person when he went on board. In this state of the evidence, the question arises as to the extent of the defendants' liability for the loss of the valise. It is conceded that they are responsible in damages to the plaintiff who owned the valise, for the value of the wearing apparel and the other articles of personal use contained in it, and also for such an amount of money therein as was sufficient to defray his travelling expenses on the journey which he had undertaken. The controversy is as to their further liability for the residue of the money contained in the valise. To determine this question, it is necessary to recur to a few established principles of law. In the first place, it is perfectly well settled that a carrier of passengers is not liable, at all events other than those arising from the act of God or the public enemy, for money contained in the luggage of a traveller, beyond a sum reasonably sufficient for the payment of the travelling expenses of the person to whom it belongs. *Jordan* v. *Fall River Railroad Co.* 5 Cush. 69. In the next place, it is also a fixed rule of law, founded on reasons of justice and sound policy, that a person cannot be allowed to recover damages for a loss to which his own fraud or negligence has contributed. This principle was early held to be especially applicable to actions against carriers, and has always been deemed to be a reasonable restriction on their general liability for loss of property intrusted to them. The application of this rule to contracts of carriage which are affected by the fraud of the owner of property intrusted to a carrier is this: Inasmuch as the care to be exercised in the transportation of property, and the reasonable compensation for its carriage, must necessarily depend on its

nature and value, it is the duty of every person who enters into a contract with a carrier to make use of no fraud or artifice to deceive or mislead him so that the risk which he intends to assume may be increased, or his care and diligence may be lessened, in consequence of deception or concealment practised upon him. If any such fraud or unfair concealment is made use of, the effect is, in case of loss, that the owner can recover only such sum as would be equivalent to the value of the property, if it had been such as it was represented to be by him, or as the carrier might reasonably have supposed it to be, if no deceit or misrepresentation concerning it had been practised when the contract was entered into. If articles of great value, such as money or jewels, are delivered to a carrier, with a statement that they are ordinary merchandise only, or if they are in such a shape or form as to lead him, in the exercise of proper care and prudence, to believe that they are articles of a wholly different kind and of a greatly less value than they actually are, he is misled and deceived in a matter which is essential to the contract into which he is induced to enter. He thereby is misled both as to the amount of compensation which he ought to receive, and as to the nature and degree of care which he ought to use in transporting the property. Nor can it make any difference whether this result is brought about by an actual misstatement in reply to questions put by the carrier, or by a resort to such artifices as lull suspicion and prevent inquiry on his part. In either case the result is the same, and the fraud as effectually accomplished by false tokens and disguises as by oral misrepresentations and falsehoods. We do not mean to imply that the owner of a package or bag intrusted to a carrier is bound to disclose its contents, unless they are inquired about by him. If property is received by him without such inquiry, then he will be liable for its loss, whatever its value, if it is contained in such a parcel or box as to indicate its nature, or is so packed as not to mislead or deceive the carrier as to its contents and induce him to believe that they are of a different kind and of less value than they in fact are. In such a case he enters into the contract of carriage, and vo'untarily assumes a risk, without

availing himself of his right to inquire concerning its nature or extent, and without any attempt on the part of the owner of the property, by artifice or deceit, to practise a fraud upon him. But it is otherwise where the carrier is put off inquiry by the appearance and condition of the. property delivered to him, and is thereby induced to believe it to be a different article and less valuable than it is subsequently claimed to have been. This principle has been often recognized and applied in actions against common carriers of merchandise, and has also. been held to be equally applicable to carriers of passengers. Story on Bailments, § 565 *et seq.* 2 Redfield on Railways, (3d ed.) 149 *et seq.* Angell on Carriers, § 261. *Gibbon* v. *Paynton,* 4 Burr. 2298. *Batson* v. *Donovan,* 4 B. & Ald. 21. *Great Northern Railway Co.* v. *Shepherd,* 8 Exch. 30. *Cahill* v. *London & Northwestern Railway Co.* 10 C. B. (N. S.) 154; *S. C.* 13 Ib. 818. *Orange County Bank* v. *Brown,* 9 Wend. 85. *Hollister* v *Nowlen,* 19 Wend. 234, 244. *Smith* v. *Boston & Maine Railroad,* 44 N. H. 325.

In regard to carriers of passengers, there can be no doubt that persons who enter into contracts with them to transport themselves and their luggage, nothing being said as to the contents of the parcels which are delivered for carriage, and these being in the form of trunks or valises such as are commonly used for clothing and other personal effects, represent by implication to the carriers that they contain no articles or property not properly included within this class or description, and such as a traveller may carry with him as part of his luggage, and for which he can hold the carrier responsible under his contract. If other and different articles of greater value are contained in such trunks or valises, it is a disguise of their true nature and value, and operates as an unfair and fraudulent concealment of them which absolves the carriers from liability therefor in case of loss. Nor is this all. In such a case, the owner can prove no contract for the transportation of any articles other than wearing apparel and other ordinary personal effects and an amount of money reasonably sufficient for the payment of travelling expenses. What is the contract into which the carrier enters when he receives a passenger? It is only to transport him safely, to-

gether with such articles and money as are properly contained in the luggage which he brings with him; but he does not contract to transport anything which he may bring with him in the shape of luggage, when in fact it is not properly such, but merchandise or money which he cannot ask the carrier to receive in that form. Therefore it is that he cannot be held liable at all, not even for gross negligence, for the loss of any articles not embraced within the contract. He did not agree to receive or transport money beyond a certain amount, or merchandise of any kind; and he cannot be held liable for any, even the smallest degree of care of that which he did not agree to take into his possession and keeping. And that is the exact difference between the class of cases where a carrier has by special contract given notice that he will not be responsible for loss of property beyond a certain amount, and those cases where a concealment or deceit as to the nature and value of the property has been practised on the carrier. As to the former, it has been held that the effect of such a notice is only to exempt the carrier from his extreme liability for property intrusted to him, but that he is still liable for a certain degree of care for property which he receives into his custody and undertakes to transport, although of greater value than that named in the notice which he has made public. But in the latter class of cases there is present the element of fraud or deceit, by reason of which the carrier has not entered into any contract for the care of property the knowledge of which has been concealed from him by the owner.

These principles are decisive of the rights of the parties to these actions. The only contracts into which the defendants are shown to have entered with the plaintiffs are for the carriage of one of them with his luggage, and of the other without any luggage. To the former they are liable only for the sum found by the jury to be the value of his wearing apparel and personal effects, and for the sum of money contained in his valise necessary to defray his travelling expenses. To the other plaintiff they are not liable at all, because he is not shown to have made any contract with them to transport luggage. The money belonging to him in the valise of the first plaintiff cannot be

recovered.    Of its existence the defendants had no knowledge. It was concealed from them by being put into luggage which was delivered to and received by them as belonging to one passenger only.    It was as such that they agreed to carry it. It was in effect a concealment of its real value to put into it a larger amount of money than was sufficient for the ex penses of a single passenger.    This enhanced the risk assumed by the defendants, without their knowledge.    It exposed them to the hazard of incurring, by the loss of the luggage of one passenger, a heavier liability than they had ever agreed to assume.    It is obvious that this was a practical fraud on the defendants.    Nor can we see any limit to the amount of liability which might be thus imposed on carriers of passengers, without notice to them, if they can be held to be chargeable in this action beyond the amount of money which one person might properly carry.    If a single passenger could carry at their risk the money of another fellow-passenger in his own valise or trunk, he might in like manner render them liable, in case of the loss of his luggage, for the money of any number of passengers, however large.

According to the views we have taken, neither of the verdicts rendered for the plaintiffs can be sustained.    Stewart is not entitled to recover anything, and the verdict in his favor must be set aside.    Dunlap is entitled to recover only the sum which the jury have found to be the amount necessary to defray his travelling expenses, and also the value of the valise and the other articles contained in it, as agreed upon by the parties; and, in accordance with the terms of the report on which the case was reserved, the verdict in his favor may be amended accordingly.