# The Michigan Central Railroad Company

*v.*

## William J. Carrow.

1. CARRIER OF PASSENGERS—*liability for jewelry in trunk checked as baggage.* A traveler who presents to a carrier of passengers a trunk or valise, such as is commonly used for the transportation of wearing apparel, represents, by implication, that it contains only such articles as are necessary for his comfort and convenience on the journey, and if it in fact contains merchandise, the traveler is guilty of such a legal fraud as to absolve the carrier from the extraordinary liability of insurer.

2. If a passenger on a railway brings a trunk to the depot, which in fact contains costly jewelry, of the value of $30,000, and gives no notice of its contents, and has the same checked as ordinary baggage, and there is nothing about the trunk indicating its contents, and the same is consumed by fire while being carried, the company not being guilty of gross negligence in respect to the origin of the fire or in attempting to extinguish the same and save the baggage, it can not be held liable for the contents of the trunk

3. SAME—*carrier not bound to inquire as to contents of passengers' baggage.* A carrier of passengers is not bound to inquire as to the contents of a trunk delivered to it as ordinary baggage, such as travelers usually carry, even if the same is of considerable weight, but may rely upon the representation, arising by implication, that it contains nothing more than baggage.

4. It is the duty of a passenger having valuable merchandise in his trunk or valise, and desiring its transportation, to disclose to the carrier the nature and value of the contents, and if the latter then chooses to treat it as baggage, without extra compensation, the liability of common carrier will attach, but not otherwise.

5. SAME—*neglect to disclose the fact that baggage contains merchandise is a fraud.* Where a person, under the pretense of having baggage transported, places in the hands of the agents of a railroad company merchandise, jewelry and other valuables, without notifying them of its character and value, he practices a fraud upon the company, which will prevent his recovery in case of a loss, except it occurs through gross negligence.

6. BAILMENT—*when contract of is created.* Where goods are placed in a carrier's possession without his knowledge or consent, there can be no contract of bailment. Where one checked his trunk on a railway as baggage, paying no compensation therefor except his fare as a passenger, and giving no notice that it contained valuable and costly merchandise, it was *held,* that the want of fair dealing on his part was a full answer to any action upon any implied contract of bailment for hire.

7. SAME—*when bailee is liable only for gross negligence.* Where a bailment is made for the exclusive benefit of the bailor, as in the case of a railway company carrying a passenger's trunk containing articles of merchandise of great value without reward, and without knowledge of its contents, the bailee is only obligated to slight care, and is liable only for gross negligence.

8. EVIDENCE—*master not bound by declarations of his servant.* In case of a disaster resulting in the destruction by fire of a baggage car and its contents, the railway company can, in no event, be bound by the subsequent declarations of one of its brakemen as to the cause of the disaster.

9. COMMON CARRIER — *distinction between carrier of passengers and freight.* There is a distinction as to the duties of carriers of freight and passengers. The first is bound to receive all kinds of freight, whether of great or trifling value, while the latter is required to receive and transport only the passengers' baggage, but not merchandise and costly articles. It has been held that the former, in the absence of fraud and deceitful practices, must inquire of the shipper as to the contents of the package, if he would protect himself in the carriage of valuable freight, but no duty is imposed on the other to inquire of a passenger the contents of his baggage.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

This was an action on the case, by the appellee against the appellant, as a common carrier, to recover the value of baggage and merchandise consumed by fire while in the defendant's baggage car. The defendant filed the general issue, and a trial was had, resulting in a verdict and judgment in favor of the plaintiff for $30,789.78.

Messrs. WALKER, DEXTER & SMITH, and Mr. O. H. BROWNING, for the appellant.

Messrs. HITCHCOCK & DUPEE, and Mr. ROBERT HERVEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Two propositions are asserted, upon which it is attempted to maintain the present judgment: First, the company is liable as a common carrier of the goods destroyed; and, second, if not liable as a common carrier, it is liable for negligence as bailee.

350    MICHIGAN CENTRAL R. R. Co. *v.* CARROW. [Sept. T.

Opinion of the Court.

In order to maintain the first proposition, it is assumed such facts have been proven as would warrant the conclusion the company, when it received appellee's baggage, knew it contained merchandise. We adopt as an accurate expression of the law what counsel concede: that a traveler who presents to a carrier of passengers a trunk or valise, such as is commonly used for the transportation of wearing apparel, represents, by implication, that it contains only such articles as are necessary for his comfort and convenience on the journey, and if, in fact, it contains merchandise, the traveler is guilty of such fraud as to absolve the carrier from the extraordinary liability of an insurer.

But, to avoid the force of this principle, it is insisted, if property is received by a carrier without inquiry, he will be liable for its loss, whatever its value, if it is contained in such a parcel or box as to indicate its nature, or is so packed as not to mislead or deceive the carrier as to its contents, and induce him to believe it is of a different kind and of less value than it is in fact. The doctrine contended for has no application to the facts of this case. The company had no actual notice appellee's trunk contained anything other than his wearing apparel, and such articles of convenience as a passenger usually carries with him. It was brought to the company's depot with the other passengers' baggage, was checked as ordinary baggage, and was, with his knowledge and consent, placed in the common baggage car. He paid no extra compensation, nor did he bargain for any care in regard to it, other than such as it was the duty of the company to bestow upon the baggage of other travelers. There was nothing in the character of the trunk itself that indicated it contained valuable merchandise. It was such a trunk as is usually carried by commercial travelers. A person accustomed to seeing such trunks would, no doubt, recognize this as one of that class. Whether the baggageman who checked appellee's baggage had any knowledge of the use of such trunks, does not appear from anything in the evidence. He had no acquaintance with appellee, and did not know what his business was. But, conceding it was of

such weight and structure as the baggage-master must have known it was a commercial traveler's trunk, he had no reason to suspect that, in addition to the articles usually carried by a traveler, it contained valuable jewelry, comprising a stock equal, if not exceeding, in value that which is commonly kept in a retail store. Appellee presented it as ordinary baggage, and the officer of the company had the right to rely upon the representation, arising by implication, that it contained nothing else. The law imposed no obligation upon him to make any inquiry as to the contents. Had the agent of the company been informed of the contents of the trunk, or had it been so packed that the nature of its contents was discernible, and the company, with such knowledge, undertook to carry the goods, there is no reason why it would not be liable as a common carrier, and so the authorities hold. But that is not this case. The carrier in this case had no knowledge of the contents of the package, either direct or constructive.

The cases that hold the doctrine, the carrier is to inquire as to the contents of the package offered, are in reference to carriers of freight, and not of passengers and their baggage. There is a reason for the distinction that will readily be perceived and appreciated. Carriers of freight receive all kinds of packages, some valuable and others of trifling value. This fact has been held to impose upon them the duty, in all cases, in the absence of fraud and deceitful practices, to inquire of the shipper as to the contents of the package, if they would protect themselves in the carriage of valuable freights. It is their duty to receive all kinds of freight, whether of great value or otherwise. The shipper is not bound, in the first place, to disclose the nature of the contents of the package, unless he is inquired of concerning it.

But this rule presupposes good faith in the shipper. If the owner be guilty of any fraud or imposition, in respect to the carrier, as to the nature and value of the parcel, he can not hold him liable, in the capacity of an insurer, for any loss that may occur. This is a reasonable and just rule. Fraud vitiates all contracts into which it enters. Common carriers are com-

pelled, by the nature of their vocation, to transport goods for all classes of people, and while they are, for politic reasons, to be held to the strict liability of insurers of the parcels intrusted to their care, the law imposes the duty upon the owner to act with common honesty.  He will not be permitted to practice any imposition upon the carrier, or delude him as to the nature and value of the goods to be transported.  The authorities on this branch of the law are quite numerous, and it is not necessary to do more than to cite a few of them.  2 Kent, 603* and 604*; Story on Bailments, sec. 565; *Cincinnati and Chicago Air Line Railroad Co.* v. *Marcus*, 38 Ill. 219; *Chicago and Aurora Railroad Co.* v. *Thompson*, 19 Ill. 578; *Relp* v. *Rapp*, 3 Watts & Ser. 21.

But the rule is different in regard to the baggage of a traveler.  As we have seen, the fact the traveler presents a parcel as baggage, whether contained in a trunk or satchel, or other convenient mode of carrying baggage, it is upon the implied representation it contains only baggage, and the carrier is not bound to inquire as to the specific contents.  There is no reason for the adoption of any other rule.  No considerations of public convenience require it.  By common custom the personal luggage of the traveler is carried without extra charge.  Passenger carriers do not assume to carry anything as baggage except such things as may be necessary to the convenience and comfort of the traveler, and perhaps sufficient money to defray the expenses of the journey.  This fact is well known to all persons who seek passage in railway carriages.  With a great majority of travelers the amount of baggage carried is of no considerable value.  The companies have no arrangements for the carrying and safe keeping of costly articles.  The contract is simply for passage and the usual personal baggage, not exceeding in weight the amount prescribed by the regulations of the company.

If this implied contract with the carrier of passengers is to be varied, modified or enlarged, it must be by direct notice of the contents of the package offered as baggage, which, in effect, would amount to a special contract.  The company may rely

upon the representation that whatever is offered as baggage is that, and nothing else. The law seems to be settled it need not inquire as to its contents. If the passenger has merchandise checked as baggage without such notice, the company can not be held liable as a common carrier. *Cahill* v. *L. & N. W. Ry. Co.* 10 C. B. (N. S.) 154; *Chicago and Cincinnati Air Line Railroad Co.* v. *Marcus, supra; Collins* v. *Boston and Maine Railroad Co.* 10 Cush. 506; *Great Northern Railroad Co.* v. *Shepherd*, 8 W. H. & G. 30; *Batson* v. *Donovan*, 4 B. & A. 21.

Upon the doctrine of these cases, it is very clear appellant was not a common carrier of the goods destroyed. Appellee gave the agents of the company no notice whatever his trunk contained valuable merchandise. No one knew better than appellee the company did not carry merchandise as baggage, free of charge, and without notice of the contents of the trunk there is neither reason nor authority for holding the company liable as an insurer against loss. In *Cahill* v. *L. and N. W. Railway Co. supra*, Willis, J., very aptly remarks, that "where a passenger takes a ticket at the ordinary charge, he must, according to common sense and common experience, be taken to contract with the railway company for the carriage of himself and his personal luggage only, and that he can no more extend the contract to the conveyance of a single package of merchandise than of his entire worldly possessions." So we say in this case, it was not in the power of appellee to extend the liability of the company on account of his own convenience. There was no undertaking to carry merchandise, and he had no right to impose his goods subtilely upon the company, and then seek to make the obligation that of a common carrier. If he desired to have his merchandise or wares go upon the train with him, it was but just to the carrier he should disclose its nature and value, and if the company then chose to treat it as baggage, the liability of a common carrier would attach, but not otherwise.

The case of *The Great Northern Railway Co.* v. *Shepherd, supra*, is a case where the passenger had a quantity of ivory

handles in his baggage. No notice was given, and it was not
so packed as to indicate to the carrier it contained merchan-
dise. It was decided the carrier of passengers for hire is, at
common law, only bound to carry their personal luggage.
Therefore, if a passenger has merchandise among his luggage,
or so packed the carrier has no notice it is merchandise, he is
not responsible for its loss.

The case of *Cahill* v. *L. and N. W. Railway Co. supra,*
in some of its features, is like the case at bar. The plaintiff
was a commercial traveler. He had checked, as baggage, a
box covered with a black leather case, which had painted
across the top, on each end, the word "Glass," in large white
letters, and also the name of his employer in like legible let-
ters. It contained valuable merchandise. No information
was given by the plaintiff to the company's servants, nor was
any inquiry made by them as to the contents of the box. It
was held, in an action against the company for the loss of the
box, that, inasmuch as it contained merchandise only, and no
personal luggage, there was no contract to carry it, and conse-
sequently it was not liable for the loss.

The case was reargued in the Exchequer Chamber, before a
full bench. 13 J. Scott, 818. Cockburn, C. J., agreed with
the judges of the Court of Common Pleas, if the company
chose to take as ordinary baggage that which it knew to be
merchandise, it is not competent, in the event of loss, to claim
exemption from liability on the ground the article consists of
merchandise. "But," he adds, "on the contrary, if a passen-
ger knows or ought to know that he is only entitled to have
his ordinary personal luggage carried free of charge, choose to
carry with him merchandise for which the company is enti-
tled to charge, he can not claim to be compensated in respect
to any loss or injury, by the company, to whom he has ab-
stained from giving notice of the contents."

The fact the box was marked "Glass," was not a circum-
stance, in the opinion of the court, that would charge the com-
pany with notice it contained merchandise. It could regard it
as an indication it was to be handled with more than ordinary

care. This case is a much stronger one than the present plaintiff's case. There was very much more to put the company on inquiry. It was ruled, however, it was not the duty of the company to inquire as to the contents of the luggage, but it was the duty of the plaintiff himself to give notice, and his failure to do so was sufficient to bar a recovery. To the same effect is the case of *The Belfast and Ballymena Railroad Co.* v. *Keys*, 9 Houses of Lords Cases, 556. The case of *Dunlap* v. *The International Steamboat Co.* 98 Mass. 371, is in entire conformity with the views expressed in the English cases.

Nor do we see how appellant can be held liable in this case, as a bailee for hire. The company entered into no such agreement with appellee, either expressed or implied. The contract with him was simply to carry him as a passenger, and his personal luggage. It was not bound to carry anything he might choose to bring with him as baggage, no matter how costly or delicate in structure, or how much attention would be required for its safe carriage.

As was said in the *Chicago and Cincinnati Air Line Railroad Co.* v. *Marcus, supra,* "When a person, therefore, under the pretense of having baggage transported, places in the hands of the agents of a railroad, merchandise, jewelry and other valuables, without notifying them of its character, he practices a fraud upon the company."

There is no pretense for saying that any of the employees on the train, or the agent who received and checked it, had the slightest knowledge the trunk contained anything else than baggage proper. Had appellee disclosed to the baggage-master, at the depot, the fact his trunk contained $30,000 worth of jewelry, it would have been his duty to reject it. He, no doubt, would have been told it was express matter, and not baggage. This important fact was not divulged. It was all-important to the carrier, as indicating the amount of risk it was about to assume. Appellee himself having treated it as baggage, and not as merchandise of extraordinary value, the company was authorized to do the same. Any other rule would permit the passenger to practice an imposition upon the carrier.

Appellee could not make the company bailee of goods, as for hire, without its consent. Story on Bailments, sec. 60; *Lethbridge* v. *Phillips*, 2 Starkie, 544.

It is inconceivable the company would have received this trunk at all, had its contents been made known. It had no means of taking proper care of packages of such unusual value. The servants employed in charge of the baggage-car, had not been employed with a view to place in their charge property of that character. It was such property as was usually sent by express. The proof shows there was another trunk in the car that was consumed, that contained $21,000 worth of watches and jewelry.

No compensation was paid by appellee for the transportation of this valuable property. His passage fare was only for the carrying of himself and his personal baggage that was contained in the trunk. Without attributing any sinister motive to appellee, we can regard this transaction in no other light than an attempt to have this large amount of property carried free of charge, contrary to the known custom of the company.

It makes no difference that others may have had some valuable merchandise carried as baggage, perhaps with the knowledge of the company. If such was the fact, it was wrongful, because in contravention of the established rules of passenger carriers. The time has now arrived for determining at whose risk this property was. Whether any fraud, in fact, was intended, it is not necessary to inquire. The transaction was fraudulent in law, and this is sufficient, by all the authorities, to avoid any contract, whether express or implied. The fact appellee offered as common baggage, merchandise of extraordinary value, is a legal fraud, such as will excuse the performance of a contract.

In *Cahill* v. *The L. and N. W. Railway Co. supra*, Byles, J., says "the conduct of the defendant, without imputing to him any fraudulent intent, in delivering a package of this description, without communicating the fact it contained merchandise, was in the nature of concealment, and amounted to a positive representation it contained ordinary personal lug-

gage only.   If that be so, there was no bailment and no contract."

Where goods have been placed in the carrier's possession without his knowledge and consent, as they were in this case, there can be no contract of bailment.   The want of fair dealing on the part of the bailor is a full answer to an action upon any implied contract of bailment for hire.   Angell on Carriers, sec. 140; *Batson* v. *Donovon, supra.*

The case of *Jordan* v. *The Fall River Railroad Co.* 5 Cush. 69, is cited as holding a stricter doctrine as to the liability of the carrier in such cases, than the case of *Dunlap* v. *The International Steamboat Co. supra.*   We do not think so.   The principle is the same in both cases, and is that which underlies all the leading cases on this question.   It is not intended to declare, because the company may not be liable as a common carrier or bailee for hire, its servants may with impunity steal the contents of the package entrusted to its care, nor omit all care for its safety.  The negligence, however, that would render the company liable where it has no notice, and the passenger fails to give notice his luggage contains anything else other than baggage proper, must be that which is defined as "gross negligence," being that high degree which indicates the absence of the slightest care.  Gross negligence has always the element of recklessness.   It can hardly be said to be gross, with that element wanting.

Counsel for appellee rely, with great confidence, on the case of the *Cincinnati and Chicago Air Line Railroad Co.* v. *Marcus, supra,* as supporting his view, that the obligation of a bailee for hire rested upon the company in this instance. That case is clearly distinguishable from the one at bar.   There, the passenger paid extra for carrying his luggage, not as merchandise, but as extra baggage.  This fact, it was thought, created the relation of bailee for hire, and what was said in the opinion as to the responsibility of the company as such bailee, was said in view of the fact such extra compensation had been paid.

The case of *Kuter* v. *Michigan Central Railroad Co.* 1

Bissell, 35, is not an analogous case with the one we are considering. That was a case of a shipment of goods, in which a quantity of gold was concealed. The defense was, the company was not a common carrier of money, but, although not liable as an insurer, it was nevertheless a bailee for hire, and was obligated to ordinary care. This may be good law, but the principle has no application to this case. The utmost that can be said in this case is, the company was a bailee without hire, of the contents of appellee's trunk. He had paid no extra compensation for carrying it. As we before said, the price paid for his ticket only included transportation for his ordinary baggage. The company had no knowledge it was receiving anything else. The goods were placed by appellee on the cars of the company for his own convenience.

The case of *Smith* v. *Boston and Maine Railway Co. supra,* is a well considered case, and holds the reasonable doctrine that, in such cases, the liability of the carrier is that of a bailee without reward. The relation that existed can not, with any degree of accuracy, be defined to be that of a carrier or bailee for hire.

The bailment in this instance must be regarded as having been made for the exclusive benefit of appellee.

It could be nothing else, for, as we have seen, the company had no knowledge it had in its possession valuable merchandise. Holding, as we do, the company was only a bailee without reward, as to the contents of appellee's trunk, it was only obligated to slight care, and could only be answerable for gross neglect. Story on Bailment, sec. 23. But the evidence shows the company took more than slight care of the goods. Certainly there was no gross negligence, within any definition that can be given of that term, on the part of the employees in charge of the train. The engine was equipped with all the best appliances to prevent the escape of fire, the baggage car was in good repair, and, when the fire occurred, it is in proof the officers on the train did everything in their power, with the means at hand, to extinguish it. How the fire originated is not explained. The theory suggested, the car was intention-

ally set on fire, to conceal the robbery of the other trunk containing $21,000 worth of watches and jewelry, rests upon nothing but mere conjecture. It is not supported by a particle of evidence. Any other theory as to the origin of the fire would be equally well supported by the testimony. It is said the baggageman and expressman in charge must have been asleep, and thus neglectful of their duty. One answer to this suggestion is, the company had not placed these persons there to watch that character of property; and another, more conclusive one, is, the record contains no evidence whatever of the fact alleged. The company could in no event be bound by the subsequent declarations of the brakeman as to the cause of the disaster. *Michigan Central Railroad Co.* v. *Gougar*, 55 Ill. 503.

But aside from this view, the evidence is positive neither the baggageman nor the expressman had been asleep when the fire occurred. No reason is shown for discrediting their testimony. The proof is abundant nothing could have been got out of the car after the fire was discovered. It was with great difficulty the express safe was thrown off the train. When the train was stopped, all the employees made every possible effort they could to save the baggage. Some of the passengers undertook to assist in saving the contents of the burning car, but they could accomplish nothing. The train was being driven at the rate of 30 or 35 miles an hour. A fire once ignited would burn with wonderful rapidity. It was shown there was no possible chance to save any of the contents of the baggage car. Every effort made in that direction was unavailing.

There is nothing in the evidence from which the conclusion could be fairly drawn the company had knowledge of the contents of appellee's trunk, nor was there anything in its appearance that made it the duty of the agents to make inquiry as to what it really contained. Who would suppose a small trunk, which could be readily picked up and carried off by any one, would be suffered by the owner to be thrown upon the platform, in the night time, and treated as baggage of ordinary value, when in fact it contained $30,000 worth of diamonds and costly jew-

elry? To hold the company liable, in the event loss should occur, for not making investigation as to the contents, would be to extend the responsibility of railway companies to an unprecedented extent beyond anything demanded by any considerations of public policy. The more reasonable rule, and the one best calculated to subserve the ends of justice, is, the passenger, who has the information, should apprise the company of the extraordinary value of the package he desires to have checked as baggage, and, upon failure to do so, if loss ensues, he must bear the consequences.

Under the most friendly criticism, appellee's conduct savors of legal fraud, not to characterize it by any stronger terms. He is not, therefore, in a position to demand any favorable construction of the evidence. According to the view we have taken, the verdict is contrary to the law and the evidence.

The judgment of the court below must be reversed.

*Judgment reversed.*