## HARRY P. HEAZLE

### *v.*

## THE INDIANAPOLIS, BLOOMINGTON AND WESTERN RAILWAY COMPANY

1. NEGLIGENCE—*whether injury caused by, or the result of unavoidable accident.* Where a passenger train was thrown from the track by a broken rail on the outside of a curve in the road, from which a passenger received a severe personal injury, and was found outside the coach in an insensible ·condition, and it appeared that the train was not running at an unusual or dangerous speed; that the track was kept in good repair, and had just .been carefully inspected and no defects were discoverable; that everything connected with the train was in good order, and it was managed by skillful and prudent operatives, and the proof seemed to show that the passenger jumped out of the car in the confusion, while if he had remained he would have received no serious injury: *Held,* in a suit by the passenger against the company to recover damages, that the injury was either attributable to the plaintiff's own want of care, or to one of those accidents occurring in very cold weather, which no skill or prudence could foresee and guard against, and that he could not recover.

2. SAME—*degree of care required of railroads.* In a suit against a railway company to recover for personal injury to a passenger, occasioned by a train being thrown from the track in consequence of a broken rail, the court, at the instance of the plaintiff, instructed the jury "that the throwing of the train from the track, if they believe, from the evidence, it was thrown from the track, and that plaintiff was thereby injured, is *prima facie* evidence of negligence, and plaintiff need prove nothing more; but it then devolves upon the defendant to prove that the injury sued for was occasioned without the least negligence, or want of skill, or prudence, or vigilance on the part of defendant, its agents or servants:" *Held,* that the instruction stated a stricter rule of liability, and imposed a higher degree of carefulness, than the law warrants.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

This was an action on the case, by Harry P. Heazle against the Indianapolis, Bloomington and Western Railway Company, to recover damages for personal injuries. The material facts of the case are found in the opinion.

Messrs. ROWEL & HAMILTON, for the appellant.

Mr. C. W. FAIRBANKS, and Mr. G. W. GERE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On the night of the 20th of February, 1872, the passenger cars on defendant's road were thrown from the track, at a point a short distance east of Mahomet station, by which plaintiff was severely injured. The accident was caused by a broken rail. It was on the outside of a curve in the track. A switch entered on the inside of the curve, and the broken rail was the one which would commonly receive all the force of the cars entering the main track from the switch, as the cars run westward. After the cars left the track, the train ran a distance of eight hundred feet upon the ties before it was stopped. The rear car was entirely off the track, and the rear trucks of the next car were also off. Neither car tipped over. Previous to the accident, plaintiff occupied the third seat from the rear door, in the last car but one composing the train. The night was cold, and the doors and windows of the car were closed. After the train was stopped, plaintiff was found, in an insensible condition, at the bottom of a culvert, over which the cars had passed after encountering the broken rail. How he got out of the car, or at what precise point of time, is not explained by the evidence. By the accident plaintiff sustained very severe, perhaps permanent injuries, suffered great pain, and incurred considerable expenses in being cured.

The declaration contains three counts, and a different liability is attempted to be set forth in each. The first count charges defendant with carelessness in propelling its train too swiftly around a short curve, and thereby throwing the train from the track, injuring plaintiff, with an allegation of special damages. The second charges defendant with neglect in examining and keeping its track in repair near Mahomet station,

whereby one of its trains was thrown from the track by a broken rail, and plaintiff injured. And the third charges carelessness in the management of the train, in not slacking the speed while running round a curve, whereby its train was thrown from the track, and plaintiff damaged. Upon a plea of not guilty, issue was joined, a trial before a jury was had, with verdict for defendant, and plaintiff prosecutes this appeal.

On the trial, at the instance of plaintiff, the court instructed the jury, "that the throwing of the train from the track, if they believe, from the evidence, it was thrown from the track, and that plaintiff was thereby injured, is *prima facie* evidence of negligence, and plaintiff need prove nothing more; but it then devolves upon defendant to prove that the injury sued for was occasioned without the least negligence, or want of skill, or prudence or vigilance on the part of defendant, its agents or servants."

This instruction states a stricter rule of liability, and imposes a higher degree of carefulness, than the law warrants, but assumes the burden thus thrown upon it by the rulings of the court. Defendant offered evidence to prove the accident occurred under circumstances where negligence could be attributed neither to the company, nor its agents or servants. And while the evidence is, in some respects, conflicting, we think it clearly warrants the finding of the jury that defendant was not guilty, as charged in the declaration.

Upon the question of the speed of the train when the accident occurred, the proof shows it was not unusual or at all dangerous. It had just left a station, and it seems improbable it had so suddenly attained any high rate of speed. While some of plaintiff's witnesses state the train was running with great rapidity, perhaps thirty miles an hour, in their judgment, the conductor and engine-driver both give it as their best judgment it was not running at a rate of speed exceeding fifteen miles per hour. The latter witnesses were certainly the most competent to judge of the speed of the train.

The proof is, the track was in good repair. No negligence in this regard is shown. On the contrary, it is proven the track inspector or walker had just been over the road. It was found to be all in order and the track safe, so far as anything could be discovered.

The charge defendant was guilty of negligence in the management of the train, in not slacking the speed while running on the curve, is fully rebutted by the evidence. According to the testimony of the engine-driver and the conductor, there was no necessity for reducing the speed—the train was moving slowly. The jury had the right to regard this as the better testimony in the case, and we do not feel authorized to say they judged incorrectly. It was their province to settle the controverted facts, and we see no reason to interfere with their conclusion.

Great stress is laid on the fact, a switch entered the track on the inside of the curve, at the place where the accident occurred. It is insisted the broken rail is the one that would receive the force of the cars as they came upon the main track out of the switch. It is not averred in any count of the declaration, the cause of the injury to plaintiff was the defective construction of the track in this particular. But, if it had been, it is not perceived how that fact could have tended to produce the accident that occasioned the injury to plaintiff. The switch opened west, and we do not understand how it could affect a train running east, in the manner suggested. Could it produce the result insisted upon at all, it is manifest it could only affect a train running westward. This train was moving eastward. But this is not considered a material point in the case.

By special verdict, the jury found that "plaintiff was guilty of greater negligence than defendant." In what particular is not stated; but doubtless the jury believed plaintiff, in the midst of the confusion of the sudden shock occasioned by the accident, left his seat, and on attempting to jump from the train sustained the injuries. Just how the injury to plaintiff

was produced, no one can tell. He was found at the bottom of the culvert, when the train was stopped, severely injured. How he got out of the car is one of the questions in the case. He must have gone out, voluntarily, either before or after the accident, or else he was thrown out by the violence of the motion of the cars. The latter theory is the one insisted upon by plaintiff; but this theory of the case seems almost incredible. The night was cold, and all the witnesses agree the doors and windows of the car were closed. When it was discovered the cars were off the track, the conductor enjoined it upon all passengers to remain in their seats. No one saw plaintiff leave the car. He has no recollection himself as to how he got off. His impression is, if he had jumped off he would have remembered it. Why he would be more likely to remember jumping off than being thrown off the cars, is not easy to comprehend. No other passenger was seriously injured. We are inclined to adopt the view the jury must have taken of the case, that plaintiff must have gone out of the car, either just before or after it was discovered to be off the track. His seat was the third from the door, and it is unexplainable how he could have been thrown out of the car, however violent the motion, with the windows and doors all closed just before the accident happened. If he attempted to leave the car after it was discovered it was off the track, it was imprudent in the extreme. Had he remained in his seat, it seems more than probable he would have sustained no injury.

Although plaintiff has suffered very great injury, we see no ground on which to base a recovery. It was through no fault of defendant, or its agents or servants. They omitted no duty imposed upon them by law, or by a due regard for the safety of passengers. Everything connected with the train was in good order, and it was managed by skillful and prudent operatives. The track had been constructed with skill and care, and, in the opinion of a competent engineer, the road was as safe as it could reasonably be constructed. It was patrolled, at frequent intervals, by a careful inspector,

and found to be in order, with no defects discoverable. The injury to plaintiff must, therefore, be attributed, if not to his own want of care for his personal safety, to one of those accidents that sometimes occur in extreme cold weather, which no engineering, however skillful, and no management, however observant, could foresee or guard against.

Perceiving no material error in the record, the judgment must be affirmed.

*Judgment affirmed.*