# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—AUGUST TERM, 1890.

## MOBILE & OHIO RAILROAD COMPANY
### v.
## JOHN KLEIN.

*Railroads—Negligence—Personal Injuries—Contributory Negligence by Passenger—Jumping from Train—Evidence—Instructions*—Res Gestæ.

1. The law requires that carriers of passengers shall exercise the highest degree of practicable care and diligence consistent with the mode of transportation used, in protecting the latter from injury.

2. In an action brought to recover from a railroad company for injuries alleged to have occurred to a passenger through its negligence, he having jumped from the train in question, this court holds, in view of the evidence, that the judgment for the plaintiff can not stand.

3. In the case presented, this court holds as improper the admission in evidence of certain alleged declarations of servants of the railroad company touching the condition of the road and the liability of the company, the same not being a part of the *res gestæ.*

4. To recover in such case plaintiff must have been in the exercise of ordinary care when injured.

[Opinion filed February 26, 1892.]

APPEAL from the Circuit Court of St. Clair County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

(63)

Messrs. Lansden & Leek, for appellant.

Mr. Charles P. Knispel, for appellee.

Phillips, P. J.   On the 12th day of January, 1887, the appellee became a passenger on appellant's train, which consisted of an engine, two coaches and a baggage car, attached in the order of engine, baggage car, smoking car and rear coach; near the station of New Hanover the hind trucks of the rear coach left the rails and in that condition ran about four hundred and fifty feet, when that coach became detached and rolled down the embankment; there were two trucks under each coach, and four wheels to each truck; one pair, the forward wheels on the front truck of the smoking car, were off the rails; appellee was in the smoking car, and after the rear coach became detached and was within one hundred feet of the car in which he was sleeping, he jumped from the car, and receiving no external injury, claims to have been injured internally, and brought suit for damages within a few days of two years after the accident.

The evidence shows the engine driver was competent, and handled his train with care, and it was equipped with the Westinghouse air-brake, the car wheels of good make and inspected the day before, and in good condition, and at the place where the trucks left the track the ties were new, sound ties, with new standard gauge steel rails, and the track was inspected a few minutes before the accident and found in good condition.   The train was running about eighteen miles per hour at the time of the accident.   Shortly thereafter, the track, on examination, was found to be in gauge and in line, and in neither the condition of the wheels, cars or track were any patent or latent defects discovered, though an effort was made by the train men to find what caused the trucks of the rear coach to leave the rails.   The jury found a verdict for appellee for $1,400.   The plaintiff's right of action is in the *prima facie* case made by proof of his being a passenger and the accident and injury.   The case is a close one on the facts and it is important that in the admission of evidence and the

instructions of the court, the jury should be confined to proper testimony and a correct statement of the law.   A witness, Conrad Steffenauer, was permitted to testify over the objection of the defendant that the company knew that was a dangerous place, because the section men told him it was an awful place to work at; that it was a pretty hard place to keep up.

The defendant called as a witness W. M. Williams, the claim agent of the company, who testified in chief to visiting the plaintiff after he instituted suit and having a conversation with him about the accident and as to how and when he, the plaintiff, got off the train.   This witness was, on cross-examination, over the objection of the defendant, permitted to be asked whether he had a conversation with one Emge while going or returning from plaintiff's house, and stated to him, Emge, that he, the witness, was satisfied the company was legally liable, and whether he did not further say that he had visited the place of the accident and it appeared to him the company was legally liable, and he was willing to settle without a law suit, and on the witness answering in the negative, the plaintiff then called Emge, who was permitted to testify over the objection of the defendant that Williams made to him the statement, that he, Williams, had visited the place of the accident and from information he had received from them was of opinion the railroad company was bound to pay damages.   The statement of section men to Steffenauer of their opinion that the place of the injury was a dangerous one to work at, and the opinion of the witness Williams that the company was bound to pay damages, were not a part of the *res gestæ* and were not competent evidence, and these declarations were well calculated to be very damaging to defendant's case.   It was error to admit in evidence these declarations. Teal v. Meravey, 12 Ill. App. 32; M. C. R. R. Co. v. Gougar, 55 Ill. 503; M. C. R. R. Co. v. Carrow, 73 Ill. 348.   The court, at the request of the plaintiff, gave to the jury three instructions as follows:

" 1. The court instructs the jury that a railroad company carrying passengers for hire is bound to use the utmost care

and skill, and if injuries are sustained by a passenger lawfully on the train, caused by the want of such care and skill, the company is liable in damages to such injured party."

"2. The court further instructs the jury that if they believe from the evidence that the train of defendant ran from the track as stated in the declaration, then such running off the track is *prima facie* evidence of negligence of the company, and the burden of disproving negligence is thrown upon the company."

"3. The court instructs the jury that the fact that the plaintiff jumped from the cars, while they were in motion, to the ground, and thus sustained injury complained of, will not deprive him of a right to recover against defendant, if the jury believe from the evidence that the accident alleged in the plaintiff's declaration had occurred, that the cars were running off the track, and that the plaintiff had reasonable ground to believe and did believe and had reason to believe that his life or limbs were in danger, and that it was necessary to leap from the cars in order to avoid the danger which threatened him."

These instructions assume to state the law which gives a right to the plaintiff to recover. It is held in Tuller v. Talbot, 23 Ill. 357: "While courts in announcing the rule governing common carriers of persons have said that they must be held to the utmost degree of care, vigilance and precaution, it must be understood that the rule does not require such a degree of vigilance as will be wholly inconsistent with the mode of conveyance adopted, and render its use impracticable, nor does it require the utmost degree of care which the human mind is capable of inventing. * * * But the rule does require that the highest degree of practicable care and diligence shall be adopted that is consistent with the mode of transportation used." In Heazle v. T. B. & W. Ry. Co., 76 Ill. 501, an action brought by a passenger against the carrier, it is said: "By special verdict the jury found that plaintiff was guilty of greater negligence than defendant. In what particular is not stated, but doubtless the jury believed plaintiff, in the midst of the confusion of the sudden shock occasioned by the accident, left his seat, and on attempting to jump from the train, sustained injuries; just how the injury to

plaintiff was produced no one can tell. He was found at the bottom of the culvert when the train was stopped, severely injured. How he got out of the car is one of the questions in the case. He must have gone out voluntarily either before or after the accident, or else he was thrown out by the violence of the motion of the cars. The latter theory is the one insisted upon by plaintiff, but this theory of the case seems almost incredible.

"The night was cold and all the witnesses agree the doors and windows of the car were closed. When it was discovered the cars were off the track, the conductor enjoined it upon all passengers to remain in their seats. No one saw plaintiff leave the car; he has no recollection himself as to how he got off. His impression is, if he had jumped off he would have remembered it. Why he would be more likely to remember jumping off, than being thrown off the cars, is not easy to comprehend. No other passenger was seriously injured. We are inclined to adopt the view the jury must have taken of the case —that plaintiff must have gone out of the car either just before or after it was discovered to be off the track. His seat was the third from the door and it is unexplainable how he could have been thrown out of the cars however violent the motion, with the windows and doors all closed just before the accident happened. If he attempted to leave the car after it was discovered it was off the track, it was imprudent in the extreme. Had he remained in his seat it seems more than probable he would have sustained no injury. Although plaintiff has suffered very great injury we see no ground on which to base a recovery. It was through no fault of defendant or its agents or servants. They omitted no duty imposed upon them by law or by a due regard for the safety of passengers. Everything connected with the train was in good order and it was managed by skillful and prudent operators. The track had been constructed with skill and care, and in the opinion of a competent engineer the road was as safe as it could reasonably be constructed. It was patrolled at frequent intervals by a careful inspector and found to be in order with no defects discoverable." The facts in the case last cited, and the facts

in this case are very similar.   In that case, as in this, the plaint-
iff jumped from the train, and in none of the instructions for
the plaintiff is it made a condition precedent to a right of
recovery that he was in the exercise of ordinary care on his
part.   The third instruction places the right of recovery on
the sole ground of there being an accident, and that plaintiff
jumped from the car and was injured, regardless of the
question as to whether the defendant was in any manner
guilty of negligence, and regardless of the question as to
whether the plaintiff was in the exercise of the same care when
he jumped from the train, as would have been exercised by a
man of ordinary care and prudence under the circumstances.
For the errors indicated, the judgment is reversed and the
cause remanded.

*Reversed and remanded.*