ISAAC A. ALLING & others *vs.* BOSTON & ALBANY RAILROAD COMPANY.

Worcester.   Oct. 2, 1878. — Jan. 7, 1879.   COLT, J., did not sit.
AMES & SOULE, JJ., absent.

If a passenger delivers to a railroad company a trunk containing samples of merchandise belonging to a third person, whose agent he is, to be transported to a place to which he has a ticket, the only contract entered into is for the transportation of the personal baggage of the agent, and the company is not liable in contract to the owner of the trunk for its loss; nor in tort, except for gross negligence; and evidence that a large part of the defendant's business consists in transporting passengers known as commercial travellers, with trunks like the one lost, containing merchandise, that such trunks are known as sample trunks and are of special construction, and that such travellers purchase tickets for the ordinary passenger trains and receive checks for their trunks, and are transported for the price of the tickets, is immaterial.

CONTRACT, with counts in tort, to recover the value of a trunk and a quantity of jewelry therein contained, delivered to the defendant, to be carried from Worcester to Hartford. Trial in this court, before *Endicott*, J., who reported the case for the consideration of the full court, in substance as follows:

The defendant owns and operates a railroad which extends from Boston to Worcester and thence to Springfield, and at Springfield connects with a railroad which extends to Hartford and thence to New York. The defendant is accustomed to sell tickets and check baggage for passenger trains over said railroads between Boston and New York, and the intermediate stations.

George W. Kerr testified that he was a travelling salesman for the plaintiffs, manufacturers of jewelry; that in the morning of May 11, 1877, he bought of the defendant, in Boston, a ticket for New York, by way of Worcester, Springfield, and Hartford, and had a trunk containing jewelry belonging to the plaintiffs, of the value of about $10,000, checked to Worcester, where he stopped and received the trunk; that in the afternoon he took the trunk to the defendant's station at Worcester and requested that it should be checked for Hartford, which was done, and he received the corresponding check, took the cars, which were just leaving the station, and went to Springfield, where he remained all night, and went the next morning to Hartford, where, on demanding the trunk, a bag was offered to him, which had a check

on it corresponding to the one given him at Worcester; that he next saw the trunk in New York broken open and the contents gone; that, when he delivered the trunk to the defendant's servants at Worcester, no inquiry was made as to what it contained; that the trunk was a sample trunk used for carrying merchandise, and weighed with its contents one hundred and thirty-five pounds; that he had been to Worcester several times by the defendant's road, and always carried the trunk containing jewelry with him.

Samuel Knowlton testified in behalf of the plaintiffs, that he was an assistant baggage-master of the defendant, and checked Kerr's trunk at Worcester for Hartford; that the trunk was a sample trunk, iron-bound and heavy; that he lifted it and made no extra charge for it; that he did not know that it contained merchandise, or what was in it; that the trunk when checked was put in the usual place for baggage going west; that the same afternoon a man brought a black bag which was checked for New York and placed upon Kerr's trunk.

George F. Stickney testified in behalf of the plaintiffs, that he was an assistant baggage-master of the defendant; that, at about half past seven in the evening of the day when Kerr's trunk was left at the station in Worcester, a man climbed over the counter into the baggage-room and asked leave to put a bundle in a bag, and exhibited the check of the bag which was then upon Kerr's trunk; that the witness took the check off the bag, and the man opened the bag and put the bundle in; that the witness then put the check back on the bag and put the bag on the trunk; that he was then called by a man at the window, and went to the window, and, while he was talking there, the man at the bag went out of the room by the door; that the trunk was put on the train for New York at half past ten that night, and had a New York check on it; that he did not know there had been a change of checks; and that he should not call the trunk a sample trunk.

It appeared that the trunk was carried to New York and there delivered to the person who changed the checks, or to his confederate, and that the trunk and its contents were stolen. And the plaintiffs contended that this was in consequence of the change of checks at the Worcester station.

It also appeared that the trunk was twenty-eight inches long, sixteen and a half inches wide, and eighteen inches high, weighing when empty sixty-five pounds, and with its contents, when delivered to the defendant, one hundred and thirty-five pounds; that it had four strong iron hinges visible on the outside, two of which were twelve inches long, and two four and a half inches long; that it had five parallel bands of sheet-iron, each one and a quarter inches in width, passing entirely around the trunk in one direction, and one band of sheet-iron one and a half inches in width going entirely round the lid of the trunk in the other direction; that it had six sheet-iron clamps or braces on the top, eight on the sides, and six on the bottom, four of those on the bottom being one fourth of an inch thick and twelve inches in length; that the band round the lid and the four heavy clamps or braces on the bottom were fastened by iron rivets, and the other clamps or bands were fastened by iron nails driven through and clinched; that the trunk was of the same shape and size with trunks ordinarily used by travellers for personal baggage, covered with black leather, with a lid opening on top swinging on hinges at the back, the lock covered by a leather covering buckled down and with the iron bands before referred to, and straps of substantially the same color with the covering of the trunk.

The plaintiffs offered to prove that this class of trunks is used for transporting merchandise, and for that purpose only, and was manufactured for that purpose solely, and that these trunks are carried on the defendant's railroad extensively; that a large part of the defendant's business consisted in transporting a large class of passengers known as commercial travellers, with trunks like this, containing merchandise of great value, and that these trunks are known as sample or merchandise trunks, and are of special construction, and in the course of that business the commercial travellers purchase tickets for the ordinary passenger trains and receive checks for their said trunks, and the defendant undertakes to transport the traveller and trunk accordingly for the price of the ticket; that the foregoing business is so pursued on railroads generally; that large numbers of persons, constituting a considerable proportion of the passengers on some full trains, are in the habit of passing over the defendant's road with trunks like this, which are generally known to be used for the transportation of mer-

chandise; and the plaintiffs contended that the jury might infer the knowledge of the defendant from this general knowledge and custom, and that the jury might find that the defendant received the trunk without inquiring as to its contents, and with notice that it contained merchandise, and not personal baggage, and that the defendant was guilty of a degree of negligence sufficient to render it liable for the loss of the trunk and contents, and that the jury might find for the plaintiffs. The judge refused to admit the evidence offered; and the plaintiffs excepted.

The defendant contended, on the evidence, " 1. That there was no contract with the plaintiffs, and could be no recovery on the counts in contract. 2. That there was no evidence tending to show that the defendant had any knowledge that the trunk contained merchandise. 3. That there was no evidence that the baggage-master had any authority to receive for transportation anything but personal baggage. 4. That this trunk was delivered, under the circumstances, as the personal baggage of Kerr, and received as such, and therefore the defendant owed no duty with reference to it, and could not be held to exercise any degree of diligence in regard to it. 5. That there was no evidence to show gross negligence on the defendant's part, or any negligence sufficient to charge it. 6. That the conduct of Kerr in sending forward the trunk, under the circumstances, on a train he was not going upon from Springfield to Hartford was, as matter of law, such negligence, contributing to or causing the loss, as to prevent the plaintiffs from recovering. 7. That on the evidence the only contract the defendant made was to carry the personal baggage of Kerr, and that there was no evidence of fraud or gross negligence on its part, and therefore the plaintiffs could not recover."

The judge took the case from the jury, and reserved for the consideration of the full court the questions of law arising upon this report; the plaintiffs to become nonsuit, or the case to stand for trial as the full court should determine.

*G. F. Hoar & T. L. Nelson*, for the plaintiffs. 1. The St. of 1867, c. 339, provides that "each railroad corporation within the Commonwealth shall give to all persons or companies reasonable and equal terms, facilities and accommodations for the transportation of themselves, their agents and servants, and of any merchandise and other property, upon any railroad owned or

operated by such corporation." The great increase of manufacturing and of means of transportation by river and railroad has caused an active competition in business, which has compelled the manufacturer to send his agents with his goods directly to the local wholesale or retail dealer. These agents, known as commercial travellers, go over the country with their goods or their samples, and have effected a great revolution in domestic commerce. Sales of many of our most important manufactured articles are made largely, of some of them exclusively, by this class of persons. It has been estimated that one hundred thousand persons are so engaged in the country to-day; that the income received by the railroads from this class of travel alone amounts to thirty million dollars annually; and that every pound of a traveller's baggage is sure of inducing orders for a thousand pounds of freight to the railroad over which the baggage is carried. In obeying the statute to make reasonable provision for the transport of this class of agents " and their merchandise and other property," the railroads may, if they choose, make proper regulation, requiring the payment of increased fares, or special notice, in the case of a traveller carrying with him merchandise of extraordinary value. But they are not at liberty to refuse to transport such merchandise by passenger trains, as passengers' baggage is commonly carried. The traveller must go by the fast trains. His case of merchandise must be with him up to the moment of his departure, and must be delivered to him in person at the moment of arrival. All this is inconsistent with the conveyance of the sample trunk from one freight station to another on trains which move slowly and arrive at different hours from the passenger trains. It would be equally against the interest of the railroad to be compelled to guard such property on its freight trains, to deposit it and keep it secure in freight houses, and be obliged to retain it after arrival. A railroad which should refuse to take by a freight train the drover's servants to accompany his live cattle would be indictable under the St. of 1867; so a railroad, which should refuse to take, as baggage upon a passenger train, the trunk of a commercial traveller containing merchandise, would be indictable. This court has frequently taken notice of " new institutions and conditions of society, new modes of commerce, new usages and practices, as the progress of

society in the advancement of civilization may require," and has found the principles of the law which it administers sufficiently comprehensive to adapt themselves thereto. *Commonwealth* v. *Temple*, 14 Gray, 69. See also *Goodwin* v. *Robarts*, L. R. 10 Ex. 337, 346.

2. In the case at bar, the jury would be authorized to find that a corporation, bound by law to furnish reasonable and equal facilities to the plaintiffs for the transportation of their agents and merchandise from Worcester to Hartford, largely engaged in the business of transporting by passenger trains the agents of merchants and manufacturers with their trunks containing merchandise, for the price of the ticket without extra charge, and having, so far as appears, no other arrangement for such transport, sold a ticket to the plaintiffs' agent and received without objection a trunk under engagement to transport it to Hartford and deliver it there to the agent, the trunk so received being known to its servants to be a sample trunk, heavily bound and clamped with iron and specially constructed for the protection of contents of extraordinary value, in a mode in which alone trunks made for the purpose of transporting merchandise are made, of a kind used solely for the purpose of transporting merchandise, known to be with its contents of much greater weight than any trunk of that size filled with apparel would be, through its own negligence failed to deliver it to the person authorized to receive it, and, by a mistake for which it was in fault, carried the trunk to a wrong place, and there delivered it to a person not authorized to receive it, whereby its contents were lost.

Whether the appearance and weight of the trunk would convey to a person familiar with baggage information that it contained something other than personal apparel, is purely a question of fact, in determining which the jury might avail themselves of their experience as practical men. There are abundant instances of packages of such form and material as convey the knowledge of their contents, without words, to men of ordinary experience; e. g. a jewelry box, a gun case, a champagne basket, a box of white lead. The trunk weighed with its contents one hundred and thirty-five pounds. The jury had the right to believe from common experience that the heaviest class

of trunks of that size ever used for the purpose of transporting wearing apparel, and made of zinc or heavy sole-leather, would weigh but about forty pounds, and if stuffed with the heaviest kind of clothing would weigh about twenty-five or thirty pounds more. They had a right to believe that the experienced servant of the defendant, on lifting a trunk of this peculiar construction, which he knew was of a kind which bore a name implying its design for conveying merchandise, and finding that it weighed twice as much as any common passenger's trunk of the size he ever lifted, had the information conveyed to him that it was not the traveller's clothing he was receiving. The jury therefore should have been permitted to find that the defendant received the trunk with knowledge of its contents, or at least without any fraud or misrepresentation on the plaintiff's part, and undertook to transport it with all the information about it which it saw fit to require.

3. The evidence does not warrant the court in holding, as matter of law, that the contract was that of passenger and carrier only. There is nothing illegal in itself in a contract to transport a manufacturer's agent with his trunk of merchandise by a passenger train. There is nothing to prevent the defendant from engaging in the general business of such transportation and fixing the terms and price for the same and giving such passengers a ticket as the evidence of their right to be so transported with their wares. A ticket is not an instrument like a bill of exchange or promissory note, knowledge of the hidden meaning of which is lodged exclusively in the bosom of the sages of the law, or which depends for its interpretation on commercial usages so ancient, uniform and well known that the court will take notice of them without proof. Carriage by railroad is less than fifty years old. Within that period, it has effected total changes in the habits, wants and business of the community, and has itself undergone changes equally great. These changes are in constant operation. While they do not authorize the court to enact new rules of law, they do very seriously affect its right to take notice, without proof, of the habits and customs of this business as facts so well known as to require no proof; and especially to shut out proof of such habits and customs as are opposed to its own knowledge. What are the legal obligations resting upon a common carrier who has simply engaged to transport a pas-

senger, is a question of law; whether a carrier made that simple engagement or some other in a particular instance, or whether the course of that carrier's business is confined to such simple engagements, or includes an obligation to provide other conveniences and perform other duties for the passenger, as evidence of which obligation he issues tickets or checks, is a question of fact. The check is certainly as strong evidence of an obligation to convey the article to which its duplicate is attached, as the ticket is to convey the passenger to whom it is sold. Even if there were no evidence of the baggage-master's knowledge of the general nature of the contents of the parcel, upon what principle can the assertion be supported, as a proposition of law, that "a traveller, who with a passenger's ticket presents to a baggage-master a trunk such as is commonly used for the transportation of apparel, represents, by implication, that it contains only such articles as are necessary for his comfort and convenience on the journey, and, if in fact it contain merchandise, the traveller is guilty of fraud"? Where a railroad receives goods as a common carrier of merchandise, or undertakes as a common carrier of passengers to transport the passenger and his luggage, the law doubtless determines the extent and condition of its responsibility, and the corresponding obligations of the consignor or passenger. But whether that relation was undertaken at all, or whether it was modified by special agreement, or by the establishment by the carrier of a general and different course of business, is surely a question of fact.

4. The baggage-master had authority to bind the defendant by his acceptance for transport of valuable merchandise. The carrier who, without fraud practised upon him, accepts in the course of his business valuable merchandise for transport, without inquiry as to its value, is liable for failure to keep it safely and deliver it. This is especially true where he so accepts it under circumstances from which his knowledge of its character may be inferred. *Pemberton Co.* v. *New York Central Railroad,* 104 Mass. 144. *Michigan Central Railroad* v. *Carrow,* 73 Ill. 348. *Belfast & Ballymena Railway* v. *Keys,* 9 H. L. Cas. 556. *Great Northern Railway* v. *Shepherd,* 8 Exch. 30. *Macrow* v. *Great Western Railway,* L. R. 6 Q. B. 612.

5. If not liable as carrier, the defendant is liable as bailee for

loss of property which it has undertaken to keep. If a mere gratuitous bailee, it is liable if the property is destroyed in consequence of gross neglect to keep it safely, as for instance the act of carrying it to New York, where it had no right to convey it, and there delivering it to a person having no title to receive it, whether the same be gross or ordinary. By the Massachusetts cases, the contract of the carrier of passengers with the ordinary passenger is to carry him and such personal luggage as is reasonable for his comfort and convenience on the journey, including reasonable apparel and a reasonable sum of money for his expenses. This must be his own money and apparel, and not another's. *Dunlap* v. *International Steamboat Co.* 98 Mass. 371. *Jordan* v. *Fall River Railroad*, 5 Cush. 69. *Collins* v. *Boston & Maine Railroad*, 10 Cush. 506. *Stimson* v. *Connecticut River Railroad*, 98 Mass. 83. But, in the absence of fraud, the passenger is not bound to disclose the contents of a parcel unless the carrier ask him. If he take it as carrier without inquiry, he is liable as carrier for its safety. If he take it not as carrier, he is liable on the principles which govern such bailments. These cases fully support the principle for which we contend. If, in the common business of conveying passengers with their personal luggage, the offer of a trunk or valise commonly used for conveying such luggage is equivalent to a representation that it contains that only, then, in the business of conveying merchants and manufacturers' agents with their merchandise, an offer for carriage of a trunk commonly used for conveying merchandise only amounts to a representation that it contains that only.

A gratuitous bailee is liable for the loss of property by reason of acts which would render him liable if he were not bailee at all. We do not charge the defendant simply with neglecting to care for the safety of this property. We contend that it is liable for conveying the trunk to New York without right, and there delivering it to a person not entitled to receive it. It was induced to do this by its own carelessness, and whether gross or ordinary is not material. *Ellis* v. *Turner*, 8 T. R. 531. *Garnett* v. *Willan*, 5 B. & Ald. 53. *Martin* v. *Great Indian Peninsular Railway*, L. R. 3 Ex. 9. *Sleat* v. *Fagg*, 5 B. & Ald. 342. *Batson* v. *Donovan*, 4 B. & Ald. 21. *Bodenham* v. *Bennett*, 4 Price, 31. *Brooke* v. *Pickwick*, 4 Bing. 218. *Davis* v. *Garrett*,

6 Bing. 716.   *Wyld* v. *Pickford*, 8 M. & W. 443.   *Duff* v. *Buda*, 3 Brod. & Bing. 177. .

*F. P. Goulding*, for the defendant.

MORTON, J.   This case cannot be distinguished from *Stimson* v. *Connecticut River Railroad*, 98 Mass. 83.   The only contract which the defendant had entered into in relation to the property which is the subject of this suit, was a contract with Kerr, the plaintiffs' agent.   This was a personal contract with Kerr for the safe transportation of himself and his personal baggage over the railroad.   There was no evidence whatever of any contract by which the defendant agreed to receive and transport Kerr's trunk as merchandise.

Upon the contract implied by the sale of a ticket to Kerr, the plaintiffs can maintain no action, and Kerr could not recover for the loss of the jewelry contained in his trunk.   *Jordan* v. *Fall River Railroad*, 5 Cush. 69.   *Collins* v. *Boston & Maine Railroad*, 10 Cush. 506.

There was no evidence which would justify a verdict for the plaintiffs upon the counts in tort.   It appeared at the trial that Kerr bought of the defendant, in Boston, a ticket for New York by way of Worcester and Springfield.   He stopped over a train at Worcester.   In the afternoon he delivered the trunk to the baggage-master of the defendant at the station in Worcester, asking him to check the trunk through to Hartford.   He gave no notice that it contained valuable property other than personal baggage, and did not ask the defendant's agent to receive and transport it as merchandise.   The agent received and checked it, in the usual course of business, as the baggage of a passenger.

The defendant thus received it under the contract implied in the sale of a ticket that it would safely transport the passenger and his proper personal baggage.   The plaintiffs contend that the jury might find that the defendant's agent knew from the appearance of the trunk that it was the trunk of a person " known as a commercial traveller," and contained merchandise.   There was no evidence that he knew this.   The most that the evidence shows is, that he may have suspected from the appearance of the trunk that it contained merchandise other than baggage.   But this fact would not affect the rights of the parties.   Kerr offered and delivered the trunk as his personal baggage; he thus repre-

sented by implication that it contained no property not included within that class or description.

The carrier was justified in receiving the trunk as baggage, under this representation, although he doubted its truth, and the only liability he would assume would be the liability which would attach if it were true.    Under such circumstances, the carrier, if liable at all for property other than baggage thus put into his custody, with a fraudulent concealment of its character and value, is only liable for gross negligence or fraud, of which there is no evidence in this case.    *Dunlap* v. *International Steamboat Co.* 98 Mass. 371.

The plaintiffs offered to show " that a large part of the defendant's business consisted in transporting a large class of passengers known as commercial travellers, with trunks like this, containing merchandise of great value, and that these trunks are known as sample or merchandise trunks, and are of special construction, and in the course of that business the commercial travellers purchase tickets for the ordinary passenger trains and receive checks for their said trunks, and the defendant undertakes to transport the traveller and trunk accordingly for the price of the ticket." The court properly rejected this evidence.    The same evidence in substance was offered and rejected in *Stimson* v. *Connecticut River Railroad*, above cited.

It would undoubtedly be competent for a railroad corporation to agree to transport, at its risk, merchandise by a passenger train for the price of the ticket sold to the passenger.    And if the defendant had made such an agreement specially with Kerr, or if it had by notice or otherwise made a general agreement that com mercial travellers might carry merchandise upon passenger trains at its risk, it might be liable in this action.    But the offer of proof does not go far enough to show such an agreement.

The fact that commercial travellers or others are accustomed to carry merchandise in passenger trains without paying any more than the usual price of a ticket for a passenger, even if known to the carriers, will not render them liable for such merchandise. The travellers carry such merchandise at their own risk.    The established rule of law which limits the responsibility of the carrier, upon the contract implied by the sale of a ticket to a passenger to the proper personal baggage of such passenger,

cannot be annulled, and the liability of the carrier enlarged, without proof of an agreement to that effect entered into by the carrier.

For these reasons, we are of opinion that, upon the evidence in this case, the jury would not be justified in finding the defendant liable either in contract or tort.          *Plaintiff's nonsuit*