MARK BLUMANTLE *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.    March 7, 1878. — Sept. 2, 1879.    COLT & SOULE, JJ., absent.

Evidence that a passenger delivered to the baggage-master of a railroad corporation a package of merchandise, and received a check for it, on showing his passenger ticket, that the baggage-master knew it was merchandise, and that other passengers had similar packages, will not warrant a jury in finding that the corporation agreed to transport the merchandise, or became liable for it as a common carrier, in the absence of evidence of an agreement that it should be carried as freight, or that the baggage-master had authority to receive freight to be carried on a passenger train, or to bind the corporation to carry merchandise as personal baggage.

CONTRACT with a count in tort, against the defendant as a common carrier, for the value of a package of merchandise, not personal baggage, entrusted by the plaintiff, a pedler, to the defendant, to be transported over the defendant's railroad from Boston to Maynard.

At the trial in the Superior Court, before *Colburn,* J., the plaintiff offered evidence tending to show that, on May 17, 1875, in the forenoon, he purchased a passenger ticket of the defendant in Boston for Maynard; that he delivered to the defendant's baggage-master two bundles or packages, requesting that the

same might be checked for Maynard; that the baggage-master asked for and was shown the passenger ticket, and then checked the packages and gave the plaintiff two corresponding checks; that the plaintiff then entered the passenger train and arrived at Maynard the same forenoon; that, upon his arrival there, desiring then to take only one of the packages, he delivered one of the checks to the station agent, received one package and went away, giving no attention to the other package, and not knowing whether it had arrived; that, one or two days afterwards, he went to the station agent at Maynard, presented his remaining check, and demanded the other package, and was informed by the agent that the package was not there and that he knew nothing about it; and that the plaintiff had never obtained said package, or learned anything further concerning it.

The plaintiff admitted that nothing was said to the defendant as to the character of the package; but, for the purpose of showing that the baggage-master, when receiving and checking the same, knew as to its contents, the plaintiff offered evidence tending to show that, from the manner of tying up the bundle, some of its contents were visible; that it appeared to be a pedler's package; and that the baggage-master then said to him, " You will make lots of money, there are lots of pedlers." The plaintiff also read to the jury certain interrogatories and answers thereto by the defendant's superintendent, who testified, that checks were used solely for personal baggage, and never intentionally for freight; and that the defendant had promulgated, in and since April 1873, a printed notice to the effect that no person in its service was authorized to take or send by passenger train any goods except personal baggage, and that any merchandise taken by such train was at the owner's risk. The plaintiff testified that he never knew or heard of such notice; and there was evidence tending to show that several pedlers, having bundles similar to that which the plaintiff claimed to have lost, went to Maynard on the same train with the plaintiff.

The defendant requested the judge to rule that, even if the defendant's servants, who received and checked the plaintiff's packages, knew that they contained merchandise, and not personal baggage, the defendant would only be liable as a gratuitous bailee. But the judge refused so to rule; and instructed

the jury that, if the plaintiff was ignorant of the rules and regu-
lations of the defendant, in relation to baggage, and delivered
the lost bundle to the defendant's baggage-master to be checked
as personal baggage was usually checked, and the baggage-master,
knowing it was not personal baggage, received it and checked it
as such, the defendant was liable for its loss, to the same extent
as if it had been personal baggage; that if the defendant did not
deliver the bundle at Maynard, or if it delivered it there and
suffered it to be taken away without the plaintiff's authority
immediately upon its arrival there, so that the plaintiff lost it,
he was entitled to recover its value; and that if the plaintiff
knew the rules and regulations of the defendant, or if the bag-
gage-master supposed the bundle to be personal baggage, the
defendant was not liable for its loss.

The jury returned a verdict for the plaintiff; and the defendant
alleged exceptions.

*W. S. Stearns*, for the defendant.

*J. E. Butler*, for the plaintiff.

GRAY, C. J.   The ordinary contract made by a railroad
corporation with a passenger, by the sale and purchase of a
passenger ticket, is for the transportation of the passenger and
of his reasonable personal baggage; and the corporation is liable
as a common carrier for such personal baggage only, and not
for merchandise delivered by the passenger as baggage, without
clear proof of an agreement to that effect.   If merchandise, not
disclosed, is included in the passenger's baggage, the corporation
is not responsible for it as a common carrier.   *Collins* v. *Boston
& Maine Railroad*, 10 Cush. 506.   *Stimson* v. *Connecticut River
Railroad*, 98 Mass. 83.   *Connolly* v. *Warren*, 106 Mass. 146.
*Macrow* v. *Great Western Railway*, L. R. 6 Q. B. 612.   Such an
agreement cannot be proved, or such a responsibility created, by
mere evidence of a custom of passengers to take with them, and
of railroad corporations to carry, similar packages as personal
baggage; or by evidence that the package, delivered by the
passenger as baggage, is of such form or appearance as to raise
a doubt or suspicion or inference that it contains merchandise.
*Stimson* v. *Connecticut River Railroad*, above cited.   *Alling* v.
*Boston & Albany Railroad*, 126 Mass. 121.   *Michigan Central
Railroad* v. *Carrow*, 73 Ill. 348.   *Cahill* v. *London & Northwestern*

*Railway*, 10 C. B. (N. S.) 154, and 13 C. B. (N. S.) 818. *Belfast & Ballymena Railway* v. *Keys*, 9 H. L. Cas. 556.

It has, indeed, been said by eminent English judges, that, if the carrier accepts for transportation, as personal luggage of a passenger, articles that the carrier knows to be merchandise, he will be liable for their loss, though not arising from his negligence. Parke, B., in *Great Northern Railway* v. *Shepherd*, 8 Exch. 30, 38. Cockburn, C. J., in 13 C. B. (N. S.) 819, and in L. R. 6 Q. B. 619. But as the decision in each case was in favor of the carrier, the court had no occasion to consider what would be sufficient evidence of such acceptance.

In *Hannibal Railroad* v. *Swift*, 12 Wall. 262, the railroad corporation, at the requirement of a military commander, in time of war, furnished transportation for his troops, their baggage, camp equipments, arms and munitions, and the chattels of himself, as well as of an army surgeon, including a considerable amount of furniture; but no contract for the transportation was made until the arrival of the command at its destination, when the amount of compensation for the transportation of the whole was agreed upon. Such was the case of which the court, in an action brought by the surgeon to recover for the loss of his baggage and furniture, said: " Where a railroad company receives for transportation, in cars which accompany its passenger trains, property of this character, in relation to which no fraud or concealment is practised or attempted upon the employees, it must be considered to assume, with reference to it, the liability of common carriers of merchandise." " If property offered with the passenger is not represented to be baggage, and it is not so packed as to assume that appearance, and it is received for transportation on the passenger train, there is no reason why the carrier shall not be held equally responsible for its safe conveyance as if it were placed on the freight train, as undoubtedly he can make the same charge for its carriage."

In *Sloman* v. *Great Western Railway*, 67 N. Y. 208, additional compensation was demanded and paid, and a special receipt given at the time of accepting the goods, and no point was made at the trial that the baggage-master was not authorized to receive them as freight. In *Graffam* v. *Boston & Maine Railroad*, 67 Maine, 234, the plaintiff's trunk was not delivered to the defend-

ant corporation as personal baggage, nor for transportation on the same train with him, but to be carried on a subsequent day, and therefore as merchandise for which the corporation would be entitled to charge a reasonable compensation.

In the case at bar, the plaintiff offered and delivered the bundles as his personal baggage, and requested that they might be checked as such; and the baggage-master gave him checks for them accordingly, as he was bound to do for personal bag gage of passengers by the St. of 1874, c. 372, § 136. There was no evidence that either the plaintiff or the baggage-master agreed or intended that they should be carried as freight, or that the baggage-master had any authority to receive freight on a passenger train, or to bind the corporation to carry merchandise as personal baggage. The case cannot be distinguished in principle from the previous decisions of this court, already cited. Evidence tending to show that the baggage-master knew or supposed the bundles to contain merchandise, or that other passengers had similar bundles, would not warrant the jury in finding that the defendant agreed to transport the plaintiff's merchandise, or became liable therefor as a common carrier. The instructions under which the case was submitted to the jury were therefore erroneous, and the                    *Exceptions must be sustained.*