(39 App. Div. 403.)

### TRIMBLE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.  March 22, 1899.)

1. CARRIERS—BAGGAGE OF COMMERCIAL TRAVELERS—NOTICE OF CONTENTS.
    Where a baggage man receives a trunk of a commercial traveler, on which he charges extra compensation for excess of weight, and marks it as a sample trunk, the company is chargeable with notice of the excessive weight, and that its contents are other than personal baggage.
2. SAME—FAILURE TO DELIVER—LIABILITY.
    Where a carrier receives a trunk of a passenger with notice that it contains samples of merchandise, for the transportation of which it charges and receives extra compensation, it is liable for its value, if lost while in its custody.
3. SAME—FAILURE TO DISCLOSE PRINCIPAL.
    Where a carrier receives a trunk of a commercial traveler, his firm may recover for its loss, though its ownership was not disclosed to the agent at the time of its receipt.
4. SAME—RELEASE FROM DAMAGES.
    Where a carrier requires its agents, in shipping trunks of commercial travelers on passenger trains, to secure a release from damages, the requirement is inoperative where the traveler is ignorant of it, and has not previously been requested to make such releases.
5. SAME—WAIVER.
    A waiver of the requirement is presumed in such a case.
6. SAME—LIMITATION OF DAMAGES IN TICKET—EFFECT.
    Where a commercial traveler pays extra compensation for the transportation of his trunk, a limitation in his ticket of the damages recoverable for loss of baggage will not preclude a recovery in excess of such limitation, since his right to recover depends on the agreement.
7. SAME—COMMON-LAW LIABILITY.
    Where a railroad company, for an agreed compensation, undertakes to carry goods and deliver them at destination, it is responsible for their loss, irrespective of liability as a common carrier.

Action by William J. Trimble, as assignee of Eugene T. Curtis and Nathaniel Gillard, composing the firm of Curtis & Wheeler, against the New York Central & Hudson River Railroad Company. There was a judgment for plaintiff, and defendant's exceptions were ordered heard at the appellate division.  Exceptions overruled.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

David Hays, for plaintiff.
Albert H. Harris, for defendant.

SPRING, J.  In 1897, Curtis & Wheeler were shoe manufacturers in the city of Rochester.  Joseph E. Taylor was their traveling salesman, and, in the conduct of their business, took with him a sample trunk, with trays filled with shoes of his employers, besides a quantity of his own wearing apparel.  The trunk was about three feet in length, two feet in width, and nearly three feet in height.  October 23, 1897, he purchased, at defendant's station, in the city of Rochester, a ticket for New York, paying the regular fare.  He then caused to be checked to New York his telescope bag, containing wearing apparel of his own, and the sample trunk mentioned, for which trunk he paid 85 cents for excess of weight above the maximum quantity permissible

on defendant's road to be transported for the passenger on his ticket. The baggage man gave to Taylor a duplicate check, showing the point of destination, perforated with punch marks indicating the date and amount paid for overweight of baggage. The baggage man marked the trunk with letters denoting it was a sample trunk. The contents thereof were not made known to him, nor did he know it belonged to Curtis & Wheeler. The ticket which Taylor received contained, in fine type, the following:

"To be begun on the day of sale, as indicated by stamp of authorized agent on back hereof, or before midnight of the following day. In consideration of extended time within which journey may be begun, holder hereof releases R. R. Co. from all liability as to baggage, except for wearing apparel, not exceeding in value $100."

Taylor had been a frequent traveler upon defendant's road in carrying on his employment, and knew the contents of the ticket.

The rules of the company were received in evidence, one of which provided that, in case the passenger desired to transport baggage in excess of 150 pounds, he must sign a release of all liability against the defendant for loss, detention, or damage to the same while in charge of the defendant. No such release was presented to Taylor on this occasion, nor was he cognizant of the existence of the same, so far as it pertained to through baggage. He had at times signed releases of that character when he desired stop-over privileges, without paying for overweight other than what would be imposed in case he went the length of his ticket contract without interruption. Taylor had frequently gone to New York over defendant's road, and the sample trunk had been transported in the same manner as at this time, by him paying for the overweight. The trunk was carried on the same train with Taylor. An accident occurred at Garrison, and, when he called for the trunk at defendant's station in New York, he found it water-soaked and the contents wholly valueless.

The claim of Curtis & Wheeler was assigned to the plaintiff, for the benefit of certain of their creditors. There was no dispute over the value of the articles. The defendant simply denied its liability to pay for the loss of the samples in the trunk. No fraud or attempt to deceive was imputed to Taylor.

The subject of the extent to which a common carrier will be held liable for baggage lost while in its custody has been much discussed by the courts. The defendant's counsel has analyzed many of the authorities, with much perspicuity, seeking to deduce the proposition, among others, that defendant is not liable, upon the assumption it had no notice of the value or character of the contents of the trunk. The testimony does not support this broad assumption. The employé of defendant, known as "number taker," kept a record of baggage received and going out, classified all the trunks and different articles, noting by letters what each article was, and on this trunk he placed the letters "S. T.," indicating it was a sample trunk. The company, therefore, did have knowledge there was excess of weight, and that the trunk contained property other than the baggage of Taylor. In the extensive business which is carried on by traveling salesmen for

their employers, a sample trunk has a definite signification; so that the agent of defendant, when he once located and fixed the trunk as of that character, may well be said to have known it contained samples to be used by Taylor in making sales upon the road. Rathbone v. Railroad Co., 140 N. Y. 48–53, 35 N. E. 418.

In Sloman v. Railway Co., 67 N. Y. 208, the plaintiff was a clothing merchant at Rochester, and his son was his traveling salesman. The young man was at Flint, Mich., and was asked by the baggage-master where he wanted his trunks checked. He said he did not know, "as he had sent a dispatch to a customer at Fentonville, to know if he wanted any goods, and, if he did not, he would go to Rochester, as he expected to meet some customers on the train." Afterwards he caused his sample trunks to be checked to Rochester, paying two dollars for excess of weight. The trunks each weighed about 300 pounds, and each was about the same size as the one checked for Taylor in this case. There was no suggestion that the baggage man had actual notice of the contents of the trunks, or of their value, or that any one, except young Sloman, was their owner. It was submitted to the jury, on this proof, to determine whether the baggage master had notice that the trunks "contained other than his ordinary personal baggage"; and the jury found for the plaintiff, and this finding was sustained by the court of appeals. In commenting upon the sufficiency of the notice, Judge Rapallo says:

"The court at general term placed its decision granting a new trial on the sole ground that there was no evidence to show that the baggage master who received the trunks had notice of the fact that they contained anything other than the ordinary baggage of Marcus J. Sloman, the agent of the plaintiff. It does not appear that it was stated, in terms, to the baggage master, what the trunks contained; but the jury had the right to consider the surrounding circumstances, the appearance of the passenger and of the articles, the conversation between the passenger and the baggage master, and the dealing between them; and if they indicated that the trunks were not ordinary baggage, or received or treated as such, the jury had the right to draw the inference of notice, and that they were received as freight."

If the carrier had notice of the character of the goods, and still undertook to transport them as baggage, he would be responsible for their safe delivery, even though, in fact, they were not the baggage of a traveler. Stoneman v. Railway Co., 52 N. Y. 429.

The counsel for the defendant lays much stress upon Talcott v. Railroad Co., 66 Hun, 456, 21 N. Y. Supp. 318. In that case Cullom, the agent of the plaintiff, purchased of the defendant, at its office in Chicago, a coupon ticket to New York, over its line and connecting lines to the latter city. He had four sample trunks, three belonging to the plaintiff, and the remaining one to other parties. He stated to the baggage master that they contained samples of underwear. He paid $16 for overweight, and they were checked to New York. He did not disclose his agency, nor that he was a commercial traveler. The trunks were lost en route on one of the connecting lines, and plaintiff brought suit. While the court deemed it essential that Cullom should have informed the baggage master that the goods were not his property,—and that subject I will discuss

later,—yet the pivotal point upon which the case turned was that the baggage man had no authority to transport this property as freight. At page 461, 66 Hun, and page 321, 21 N. Y. Supp., Justice Van Brunt, in his opinion, says:

"It is true Cullom swears he stated to the baggage master that these trunks contained samples of underwear. But it does not appear that the baggage master had any authority whatever to make any contract of affreightment, or to allow merchandise to be carried as freight; and it does not appear that he ever did exercise any such authority."

Again he says:

"So, in the case of Sloman v. Railway Co., 67 N. Y. 208, it was held that where the company receives the trunks of a passenger, with notice that they contain property other than personal baggage, and charges and receives extra compensation for their transportation, an agreement to carry the property as freight may by the jury be inferred therefrom. But the authority of the baggage master in that case to receive the trunks as freight was not raised, and upon the trial the court stated that the authority of the baggage master seems to have been assumed, he being in the receipt given for the trunks, as well as in the motion for the nonsuit, designated as the agent of the defendant; the simple question submitted to the jury being upon the claim that there was no evidence as to whether the defendant's agent was notified that the baggage was other than ordinary baggage."

The bedrock of distinction between that case and the Sloman Case, supra, is that the Talcott Case was decided in favor of the defendant upon the specific ground that the baggage master possessed no authority to receive the trunks as freight.

In this case there is no question as to the authority of the baggage man. The common practice was to transport the sample trunks containing merchandise of commercial travelers on passenger trains on defendant's road, and that practice had invariably been followed in its shipment of the trunk used by Taylor. The rules required that the baggage agent obtain a release from these men; but Taylor was ignorant of that exaction, and had not been required before to sign any such paper, so that secret instruction, in limitation of the baggage master's apparent authority, was not operative against plaintiff's assignors. 4 Elliott, R. R. par. 1649; Hutch. Carr. par. 269; Lawson, Bailm. par. 284; Oderkirk v. Fargo, 61 Hun, 418, 16 N. Y. Supp. 220; Isaacson v. Railroad Co., 94 N. Y. 278; Lynch v. Railroad Co., 90 N. Y. 77; Quinn v. Power, 87 N. Y. 535. However rigid the requirement was as an instruction to the baggage man, his practice, so far as the proof shows, and especially in his dealings with Taylor, being contrary to this regulation, a waiver of the rule will be presumed. Rathbone v. Railroad Co., 140 N. Y. 48–53, 35 N. E. 418; Isaacson v. Railroad Co., 94 N. Y. 278–284 et seq.

The counsel also relies upon Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 711. In that case Arthur J. Perry, one of the firm of the petitioners, purchased a ticket from Springfield, Ill., to Petersburg, in that state, at the same time causing his trunk to be checked to the same destination. The trunk contained jewelry, of the value of over $7,000, and was lost in transit. The defendant's agent had no knowledge of the contents of the trunk, or that it was other than the personal baggage of the passenger.

Judge Blatchford, in the opinion of the court, makes extended extracts from the testimony to support the proposition that the baggage man possessed no information of the contents of the trunk, or that it contained anything except such baggage as any traveling man was in the habit of carrying.  He says (page 638, 148 U. S., and page 715, 13 Sup. Ct.):

"Is there any evidence in the case from which it can fairly be said that the agent had reason to believe that the trunk contained jewelry?  It is clear that Perry, in purchasing a ticket for a passenger train, and then tendering his trunk to the agent to be checked, tendered it as containing his personal baggage.  The agent was not informed to the contrary by Mr. Perry, or by any other person."

After stating that the trunk was a wooden trunk, and small in size, he adds (page 640, 148 U. S., and page 716, 13 Sup. Ct.):

"Perry as a passenger, on a passenger train, was bound to act in good faith in dealing with the carrier.  He presented the trunk to the baggage agent as containing his personal baggage, and got a ticket for it as such; and, that being so, he cannot recover for the loss of a stock of jewelry contained in it.  No circumstances occurred, according to the evidence, which required the baggage agent to make inquiries as to the contents of the trunk so presented as personal baggage.  The presentation of the trunk, under the circumstances, amounted to a representation that its contents were personal baggage."

Again, in this case, the trunk lost contained jewelry of great value,—vastly disproportionate to what the baggage agent would have inferred, even had he known it was a sample trunk.  Perry had practiced a deception upon the agent in concealing from him the value of the contents.  A case of that kind is to be distinguished from one like the present, where the value of the articles in the trunk is not in excess of what might be expected to be carried in trunks designated as sample trunks.

Alling v. Railroad Co., 126 Mass. 121, cited by the counsel for the defendant, was a case where the agent caused to be checked a trunk containing jewelry, of the value of $10,000, as personal baggage; but so transparent a fraud can hardly be likened to the conduct of Taylor in the present case.  In cases of that kind, the obvious purpose of the agent to defraud the railroad company is an element that is considered controlling.

In Blumantle v. Railroad Co., 127 Mass. 322, there was no intention to have the baggage carried as freight, and no proof that the baggage master had any authority to receive freight for transportation on a passenger train, clearly distinguishing it from the case at hand.

It is urged by defendant's counsel, and the suggestions in some of the cases sustain this contention, that plaintiff cannot recover, as the title of Curtis & Wheeler to the property was not made known to the baggage agent by Taylor.  That principle was decided adversely to defendant's contention in the Sloman Case. Schouler, Bailm. § 568; Hutch. Carr. § 722; Ludwig v. Gillespie, 105 N. Y. 653, 11 N. E. 835; Smith v. Stephens, 47 Hun, 318.

It is a maxim of the law that an undisclosed principal can reap the benefit of the contracts of his agent.  As he is liable for the acts of his agent when his principalship is established (Brady v. Nally,

151 N. Y. 258–262, 45 N. E. 547), a priori he is not debarred from enforcing any obligation or claim inuring to his pecuniary advantage as the result of his employé's services. With the enormous amount of business carried on by commercial travelers, mainly in the employment of others, it would be a drastic rule which enabled a common carrier to escape liability because the traveling agent omitted to disclose to the baggage master the name of his employer. The carriage of the merchandise in no manner would be affected by such a disclosure, and it would simply be a loophole to evade an otherwise just liability. If the baggage master had reason to believe the sample trunk contained merchandise, it was not incumbent upon Taylor to apprise him of its actual contents, or of their real value. This rule obtains where no disception or artifice is practiced upon the baggage man, or where the merchandise is no greater in value than might reasonably be expected to be in a trunk of that designation and appearance. The duty is primarily upon the agent to inquire as to the contents of a trunk under such circumstances, instead of upon the shipper to furnish such information uninvited. Baldwin v. Steamboat Co., 74 N. Y. 125; 5 Am. & Eng. Enc. Law (2d Ed.) p. 348 et seq., and cases cited.

It is contended by defendant's counsel that the limitation in the passenger ticket to loss of baggage to the sum of $100 in value debars recovery in this case. The right of recovery depends upon a distinct, independent agreement, by which the defendant, for an extra recompense, agreed to transport plaintiff's merchandise on a passenger train. Millard v. Railroad Co., 20 Hun, 191. This practice, as I have stated, was a common one for the carriage of sample trunks on this railroad. Presumably, it inured to the benefit of defendant, as well as facilitated the business of the commercial traveler. The evidence of this separate agreement was in the duplicate check. Had the ticket inhibited the carriage of baggage in excess of 150 pounds, that inhibition would not be effective to abrogate the separate arrangement by which defendant agreed to carry the sample trunk for a consideration which it fixed. The baggage man, in agreeing to ship this trunk, was in the line of his authority; and the very fact the defendant promulgated a rule for his guidance, requiring him to obtain a release from a passenger for all loss or damage to his merchandise for the privilege of having it conveyed as baggage, indicates the defendant did not regard merchandise of this character, however shipped, as within the definition of "baggage," as used upon the passenger ticket. See Rathbone v. Railroad Co., 140 N. Y. 48–51, 35 N. E. 418; Mynard v. Railroad Co., 71 N. Y. 180; Blossom v. Dodd, 43 N. Y. 264. Irrespective of the liability arising against the defendant as a common carrier, it is responsible to the plaintiff for the loss of this merchandise. For an agreed compensation it undertook to carry these goods to New York, and deliver them to Taylor at the point of destination. It was not a gratuitous bailee, but it made a contract, based upon a good consideration. It failed to deliver the goods upon demand, and that omission established a prima facie liability against it. Ouderkirk v. Bank, 119 N. Y. 263, 23 N. E. 875; Claflin v. Meyer, 75 N. Y. 260;

Wheeler v. Navigation Co., 125 N. Y. 155, 26 N. E. 248. The burden was upon the defendant to show it exercised due care in the transmission of the goods; and, upon its failure to do so, the nondelivery of the goods rendered it liable as a negligent bailee. Stewart v. Stone, 127 N. Y. 500–506, 28 N. E. 595; Canfield v. Railroad Co., 93 N. Y. 532; Curtis v. Railroad Co., 74 N. Y. 116; Fairfax v. Railroad Co., 73 N. Y. 167; Wheeler v. Navigation Co., 125 N. Y. 155, 26 N. E. 248. As was said by Judge Finch in the case last cited (page 162, 125 N. Y., and page 249, 26 N. E.): "The nondelivery at the port of destination is presumptive evidence of such negligence."

It may be there were questions of fact in the case to submit to the jury, as to whether the baggage man had adequate notice of the contents of the sample trunk, and whether the articles were such as might reasonably have been expected to be contained in it. Defendant's counsel, however, at the close of the evidence, asked for a nonsuit, and stated to the court he did not desire any questions submitted to the jury. So it cannot now be urged there was any question of fact to be submitted to the jury, and neither counsel raise that question. The effect of the direction is to establish the questions of fact, if any there be, in favor of the plaintiff.

Defendant's exceptions overruled, and motion for new trial denied, with costs, and judgment ordered for plaintiff on the verdict, with costs. All concur.