Spear, J.
Facts essential to an understanding of the case made by the record follow:
The occurrence out of which the controversy arose took place March 16, 1898. At that time the Toledo & Ohio Central Railway Company owned and operated a line of road from Corning, in the county of Perry, to Bucyrus, in the county of Crawford. At the former place its line connected with the line of the Kanawha & Michigan Railway Company, running *276 thence southeasterly to Athens. The two roads were operated as a continuous line of road between the termini mentioned, and, by the traffic arrangement then existing, through passenger trains were run over the entire line without change of cars. Orews managing through trains were changed at Corning, the one managing the trains south of Corning being in the employ of the Kanawha & Michigan road, and crews managing trains north of Corning being in the employ of the Toledo & Ohio Central road. In collecting mileage from passengers on through trains the conductors kept separate accounts and returned to the respective companies the amounts collected for the respective roads.
On the day named above, one H. W. Burdick, a traveling salesman for the defendant in error, came from Athens on the line of the Kanawha & Michigan road, to Glouster, another station on the same road. He was traveling on a mileage ticket issued by the Wheeling & Lake Erie Company, good for passage over other roads, including those before mentioned. The ticket, which was signed by Burdick, provided that uthe holder of this ticket shall be allowed free transportation of 150 pounds of baggage, and the company transporting it is hereby released from any and all claims and demands whatsoever, for any delay or for any and all loss or damage while in its possession, in excess of 100 pounds.”
There came with Burdick, on the train from Athens, two trunks containing watches and jewelry for sale to the retail trade, but not containing baggage. On reaching Glouster he had the trunks taken to the sample room of an adjacent hotel, and there exhibited the contents to customers. Later, the trunks were taken to the station by Burdick’s direction, and he caused *277 them to be checked to go on the same train with himself to Bremen, a station north of Corning and on the line of the Toledo & Ohio Central road. Testimony was given at the trial by the plaintiff below for the purpose of showing that the baggage-master at Glouster, one Jones, who checked the trunks to Bremen, knew that they contained merchandise, and it is probable that the jury found in favor of the plaintiff on that question. This baggageman was the employe of the Kanawha & Michigan Company, and in no sense the agent of the plaintiff in error, except as stated in the stipulation hereinafter to be mentioned. The trunks thus checked were carried by the Kanawdia & Michigan road to Corning, and there passed into the possession of the Toledo & Ohio Central road, and from thence proceeded north toward Bremen, the point of destination. At Glouster, Burdick paid Jones thirty cents excess weight on baggage to Bremen, and took a receipt called “excess baggage receipt.” The property was destroyed by fire resulting from a collision which, it is stipulated, and is thus part of the record, occurred under the following circumstances: “The said collision occurred between said passenger train and a helping engine, both being in charge of employes of defendant, and the said collision was caused by the engineer of the helping engine misreading his watch as three o’clock, when, as a matter of fact, it was three-fifteen o’clock, which mistake resulted in giving him only six minutes to reach Claybank, a distance of ten miles, which it was impossible for him to do. The engineer had an open-face watch movement in a hunting case, and he held the stem horizontally instead of perpendicularly when reading the watch, and this causing the said error.”
*278 It was not found possible to save the property or the train, and it was consumed.
Respecting the agency of the baggage-master at Glouster it is stipulated: “That Glouster, the point at which Mr. Burdick took the train which was wrecked, was a station on the Kanawha & Michigan road, and that under the traffic arrangements, the baggage agent at that point and his assistant had authority to check baggage to all stations on connecting roads, including those on defendant’s road, and that said assistant of the regular baggage agent at said point did check the trunks mentioned in the petition, on the occasion therein mentioned to Bremen, a station on defendant’s road, and placed the said trunks on the north bound through train.” And this is the only evidence bearing upon that question.
At the trial the court, among other things, instructed the jury that: “If the defendant received these goods, this jewelry, without any knowledge as to the contents of the trunks, then it became liable only as an ordinary bailee, and it owed to the plaintiff the duty of ordinary care, as I define it to you. If the defendant received the goods, and undertook to ship them to Bremen, it was its duty to use such care in their transportation and shipment as an ordinarily prudent person is accustomed to use in dealing with his own property under the same circumstances and conditions. If it cared for this property in such manner, and it was lost by no act of negligence, as thus defined, the plaintiff cannot recover; but if it failed to use this degree of care, that is, that care that the ordinarily prudent person takes of his own property in precisely, similar circumstances, then the plaintiff is entitled to recover.” And this is one, perhaps the principal, ground of error alleged.
*279 In brief, the charge is that the company would be liable for the value of the jewelry and watches whether it had knowledge that the trunks contained such merchandise or not, provided the loss was occasioned by the negligence of the company. This instruction practically eliminated from the case the contested point on the evidence as to the knowledge of the baggage man at Glouster respecting the contents of the trunks.
To show that this was an erroneous instruction, we need but cite the decision of this court in this case when here before, as found reported in 57 Ohio St., 38. The syllabus is: “Although a common carrier of passengers is under no obligation to carry articles of merchandise as baggage, and although it is not liable for the loss of such merchandise if it is tendered to and received by it as baggage without actual knowledge of its true character; yet if it receives and checks merchandise as baggage with actual knowledge on the part of its agents that it is merchandise, it thereby waives its right to immunity from liability because of the character of such article.” This is holding in effect that a common carrier of passengers, being under no obligation to carry articles of merchandise as baggage, is not 'liable for the loss of such merchandise if it is tendered to and received by it as baggage without actual knowledge of its true character. Further comment upon this proposition would seem to be unnecessary.
The court further instructed the jury as follows: “The plaintiff claims that the defendant undertook to carry these trunks of jewelry of the plaintiff safely from the station of Glouster to the station of Bremen, and that the baggage agent of the defendant at Glouster had actual personal knowledge that the trunks *280 contained merchandise and did not contain the baggage of H. W. Burdick, who was the agent of plaintiff..
“Upon this, the claim of the plaintiff, you are instructed that if you find that the agent at Glouster, Jones, when he received, checked and shipped these trunks of jewelry upon the occasion in question, had actual personal knowledge that they contained jewelry, and that the same were destroyed while in the defendant’s custody, you should find for the plaintiff.
“Upon this branch of the case, the question of liability turns upon whether or not Joe Jones, the baggage agent, had actual knowledge of the contents of these trunks. It is not claimed that anybody else hacl actual knowledge, but if Joe Jones had actual knowledge, and you find that he had the power and authority to receive baggage, or receive merchandise and trunks in this manner, and check them for the defendant, notice to Joe Jones would be notice to the defendant. ' The power and authority to take baggage, or merchandise as baggage, gives the power to receive notice of the contents of the baggage.
“The liability, therefore, as I have told you, turns upon whether the agent of the defendant at Glouster had actual knowledge when he received and checked the trunks in question, that they contained samples of merchandise, and were not ordinary baggage.
“If he had such knowledge, you must find for the plaintiff; if he had not such knowledge, you must find for the defendant, — that is, upon this branch of the case, and the burden of proof upon all of these questions is upon the plaintiff.
“And here I will give, as pertaining to the case, certain charges asked by counsel in the case. The *281 following is a correct proposition of law asked for by the plaintiff: If the jury find that the agent at Glonster, when he received, checked and shipped plaintiff’s trunks of jewelry, on the occasion in question, knew that they contained a stock of jewelry, and that the same was destroyed while in defendant’s custody, you should find for the plaintiff.”
These instructions, in one paragraph, appear to leave to the jury the question of determining not only whether the baggageman Jones had knowledge of the contents of the trunks, but whether he had authority from the Toledo & Ohio Central Railway Company to receive merchandise and trunks and check them, and further instructs that notice to Jones would be notice to the company, and the power and authority to-take baggage gives the power to receive notice of ihe contents of the baggage, while in another paragraph the case is made to turn wholly upon whether or not Jones had actual knowledge of the contents of the trunks irrespective of what they might find as to the authority Jones possessed. This left the matter in a state of uncertainty before the jury; but beyond this the assumption is that Jones, in whatever act the evidence showed he performed with respect to the trunks, and whatever knowledge he had as to their contents,-was the agent of the Toledo & Ohio Central Company; and this is based upon another assumption, viz: that authority to the employe of a connecting road to check baggage carries authority to check merchandise as baggage, for no other or different authority is shown. This question was presented by the record when this case was formerly before the court, but for reasons which need not be here stated, was not discussed by the court nor disposed of. A majority of the court is now of the opinion that no such *282 presumption follows. Especially does it not follow in this case. Equally misleading is the direction that the power to take baggage gives power to receive notice of the contents of the baggage. There was in this case no baggage concerning the contents of which notice could be given or taken. Nor is it the duty of a company to examine into or pass upon the specific contents of baggage. The company may relv upon the implied representaion that whatever'is offered by the passenger as baggage is that, and nothing else. If it be baggage, the baggage goes under the contract to carry; if it is not, it does not. Stimson v. C. R. R’d. Co., 98 Mass., 83. The right to have baggage carried is a right personal to the passenger, and is an incident to his right to have himself carried. Both rights in this case rested upon the written contract. In the carrying out of that contract the baggageman at G-louster might represent the connecting road. But the agreement to carry merchandise would be a wholly different agreement. As to such property the Toledo & Ohio Central Company had no opportunity to make an agreement, and none existed between it and any person whomsoever. Such service, which is freight service, is performed by express companies, or by fast freight companies, or by the railroad company itself; but when by the latter it is by a different department, managed under rules different from those controlling the carrying of passengers, and often, perhaps more frequently, by different persons as agents. And being thus a different service, governed by different rules and managed by different agencies, it is utterly unreasonable to say that authority to act for a connecting company in one branch implies authority to act for it in the other. And hence the agreement or understanding between the man Jones and *283 Burdick respecting the trunks, in so far as it related to merchandise, whatever it may have been, was not the agreement or understanding of the Toledo & Ohio Central Company, and, as to that subject matter, there was no agreement or understanding bet ween the passenger Burdick and the Company. Its contract with him was a strictly personal contract for his safe transportation over the railroad, to which the carriage of suitable personal baggage was, as before stated, merely incidental. He had no right to transport merchandise under cover of his personal baggage;.much less could he take merchandise which belonged to other persons, and thereby give them the right of a contracting party against the Company, for a contract to carry Burdick’s person and his personal baggage could not, with reason, be tortured into a contract to carry the plaintiff’s merchandise. True, the Company did carry the merchandise. But it had the right to assume, when it took charge of the car containing the trunks at Corning, that they contained baggage, and no duty devolved upon it to make inquiry as to their real contents.
It must be borne in mind that we are here dealing with the liability of a carrier of passengers, not with a carrier of freight, as such. As to the latter they transport all manner of goods, classify them, and charge according to the class. Thus they are called upon to inquire into the contents and character of what is offered and may do so with as much thoroughness as they may desire, and with whatever care or the lack of it that is done, there is a contract to transport the package with full opportunity to know its contents. Hence it has often, perhaps generally, been held that the carrier may not stipulate as against his own negligence for a liability less than the real value of *284 the article carried. This is on the ground of public-policy. As held in Graham v. Davis, 4 Ohio St., 368, 377, a case involving the liability of a common carrier who claimed exemption by reason of a special-contract with the shipper: “One of the strongest motives for the faithful performance of these duties is found in the pecuniary responsibility which the carrier incurs for the failure. It induces him to furnish safe and suitable equipments, and to employ careful and competent agents. A contract, therefore, with-one to relieve him from any part of this responsibility reaches beyond the person with whom he contracts,, and affects all who place their persons or property-in his custody.” But, as to carriers of passengers,, where the baggage is carried as a mere incident, with the right on the part of the carrier to rely upon the-implied representation that the package offered as baggage contains that only, it is a fraud upon the-carrier for the passenger to palm off on to him, under the guise of baggage, that which is not baggage, but is merchandise and that only. And it follows, also, that, as to such merchandise the minds of the-parties have not met and there is no contract respecting it. The carrier has not agreed to receive and carry that merchandise. The relation that existed cannot, with any degree of accuracy, be defined as that of a, bailee for hire. Such relation can be established only by agreement, and cannot be created without knowledge and consent on the part of the carrier. Here there was no hire paid; no consent, no knowledge. It results that the bailment was for the exclusive benefit of the passenger. The property was placed in the possession of the Company for his convenience- and his only, and that too, by reason of his unfair and fraudulent concealment; and no just principle can *285 be invoked which will make the carrier liable for loss, save only for his gross neglect of duty, that reckless disregard of the rights of others which amounts to willfulness. He may not willfully destroy or injure the property of another even though it came into his charge by unfair means. He is thus made a bailee, but such Avithout hire, and without consent, and he cannot be held, as in the other case, for the value of the article either as insurer or on the ground of mere negligence. And this we take it is the difference betAveen the class of cases Avhere a carrier has undertaken to limit liability by giving notice that he will not be responsible beyond a certain amount, for property he has agreed to carry, and those cases where a deceit as to nature and value has been practiced upon the carrier respecting property which he never agreed to carry. A case illustrative of the application of the principle governing the first class alluded to is Express Company v. Backman, 28 Ohio St., 144, and one illustrating the second class is First Nat’l Bank v. Railroad Company, 20 Ohio St., 259. There can . be no rule of public policy requiring a carrier of passengers to be responsible for the value of property injured by ordinary negligence while in his possession where that possession has been had, not by reason of any contract, but by fraudulent concealment and misrepresentation. In the affairs of life negligence is less pernicious than deceit. Cheating cannot have a preferred claim upon justice even as against negligence. Taking it by and large, a careless person is less dangerous to his fellows than a cheat, and it is not wise to carry the condemnation of negligence to the point of rewarding fraudulent concealment, especially where the result would work a gross injustice. Such concealment, in a case like the *286 one at bar, enhances the risk of the carrier without, his knowledge. It exposes him to the hazard of incurring a different liability than that he has agreed to assume, a liability to which there is practically no limit. If the carrier may be held, under such circumstances, for from four thousand to five thousand dollars, as in this case, that liability might, under-circumstances differing only as to value, be swelled to hundreds of thousands of dollars. It is but just to hold, as we do, that where merchandise is shipped under circumstances such as the evidence discloses, in this case, it is, as to the connecting road, shipped at the owner’s risk. We need not discuss the liability of the Kanawha & Michigan road, had the accident occurred on its line, for we have a different case. Thebaggageman was the employe, the agent, the alter ego, so to speak, of that company at Glousier. We have found that, respecting the subject matter of this contention, he was not the agent of the plaintiff in error. Nor can the fact that extra fare was paid Jones for excess baggage'to Bremen make any possible difference. That transaction, on its face, related to overweight on baggage, and that only.
We do not wish to be understood as finding that: there was actual concealment and deceit by Burdick in his dealing with Jones respecting the checking' of the trunks. There may or may not have been; but in either event the result worked what would prove-a fraud on the plaintiff in error should it be held liable for the loss of the jewelry.
Our conclusion respecting the question of liability of a carrier of passengers for loss of merchandise, in the absence of knowledge and of contract, is, we believe, fully sustained by the case of First N. B. v. M. & C. R. R. Co., supra. Authorities bearing with more: *287 or less force on the question are the following: Batson v. Donovan, 4 B. & A., 21; G. N. R. Co. v. Shepherd, 8 Ex., 30; B. & B. Ry. Co. v. Keys, 9 H. of L. Cases, 556; Cahill v. L. & N. W. Ry. Co., 100 E. C. L., 154; Macrow v. G. W. Ry. Co., L. R. 6 Q. B., 612; 2 Kent’s Com., 603; Story on Bail, Section 565; Relf v. Rapp, 3 W. & S., 21; Hawkins v. Hoffman, 6 Hill, 586; Collins v. B. & M. Rd., 10 Cush., 506; Stimson v. C. R. Rd. Co., supra; Dunlap v. I. S. Co., 98 Mass., 371; Connolly v. Warren, 106 Mass., 146: Ailing v. B. & A. Rd., 126 Mass., 121; Blumantle v. F. Rd. Co., 127 Mass., 322; C. & A. Rd. Co. v. Thompson, 19 Ill., 578; M. C. R. R. Co. v. Carrow, 73 Ill., 348; Pfister v. C. P. R. Co., 70 Cal., 169; Humphreys v. Perry, 148 U. S., 627.
We are aware that there are decisions to the effect that a common carrier is liable for the value of a passenger’s property lost while in his custody by reason of negligence even though the property is merchandise checked under the guise of baggage, and its true character unknown to the carrier. Penn. Co. v. Miller & Co., 35 Ohio St., 541, is a case of this kind. .The passenger was Miller & Company’s agent who had in his valise samples of merchandise belonging to them. The valise was checked at Bucyrus for Forest, to which point the agent had a ticket, nothing being said about what the valise contained. The passenger and valise landed at Forest about nine o’clock at night.. It was not called for and was placed in the warehouse of the company. During the night the warehouse was broken open and the valise stolen. It was alleged that the warehouse was insecure and not a safe or suitable'place to store property in. The holding, as expressed by the syllabus is, that the implied undertaking of the carrier to insure the safety of bag *288 gage does not extend to contents of a trunk consisting of samples of merchandise, but the carrier, by taking the property into his charge and putting it into the warehouse for safe keeping, assumes the relation to it of an ordinary bailee, and is bound to take such care of the property as a man of ordinary prudence would of his own under like circumstances. The assumption on which the ruling is based is that the carrier voluntarily took the property into its charge for safe keeping and therefore assumed the relation to it of an ordinary bailee. The fallacy of this is in assuming that the property which is thrust upon a carrier and accepted under a belief, induced by the deceit of the owner, that it is what the carrier has agreed to take, when it is not such, is in his possession voluntarily. As to the merchandise we think this assumption, for the reasons already stated, is not sound. It is on principle, in square conflict with First N. B. v. M. & C. Ry. Co., supra, and with T. & O. C. R. R. Co. v. B. & B. Co., supra, and after mature reflection, a majority of the court has concluded the case, as to this proposition, should be overruled.
It is argued that the negligence of the engineer of the helping engine which caused the collision and the loss was gross. What distinctions as to negligence exist in law has been a subject of much discussion resulting in widely differing conclusions. Into this discussion we do not need to enter. So far as appears in the record the Company had exercised due care in the selection of an engineer, and he was provided with an accurate time-piece, and undertook to do his duty in its use, but, by one of those strange accidents likely to occur to any one, and involving an inadvertence, but no moral fault, he misread the time *289 on the face of the watch. The mistake, while such as would make the Company liable for injury to a passenger, was an innocent one so far as the motive was concerned. In this sense it was not gross, nor did it involve such heedlessness as to indicate a reckless or wilful disregard of the rights of others. In no view¡ as we think, could such negligence give a right of action against the Company to one whose property-was on the train not by virtue of any contract, but through the deceit and wrong-doing of the owner.
The judgments below will be reversed, and, the facts respecting propositions vital to the case of the plaintiff below being conceded, final judgment will be here entered for plaintiff in error.

Reversed.

Williams and Minshall, JJ., dissent.